PEOPLE v MAZZIE

PEOPLE v SPANGLER

Docket Nos. 75276, 75493. Argued January 13, 1987 (Calendar Nos. 2-3). Decided September 22, 1987. Rehearing denied in *Mazzie, post,* 1213.

John P. Mazzie pled guilty but mentally ill in the Recorder's Court of Detroit of second-degree murder. In accordance with a plea bargain, charges of first-degree murder and kidnapping were dismissed and a sentence of twenty-five to fifty years was imposed. Over a year later, the defendant was granted a new trial by the trial court. Following trial, he was convicted by a jury of second-degree murder and kidnapping. The court, Leonard Townsend, J., sentenced him to seventy-five years for the murder conviction and to life for the kidnapping conviction. The Court of Appeals, V. J. BRENNAN and KALLMAN, JJ. (R. B. BURNS, P.J., dissenting), affirmed the murder conviction, but reversed the kidnapping conviction (Docket No. 67670).

Richard L. Spangler pled guilty in the Oakland Circuit Court of one count of first-degree criminal sexual conduct and of armed robbery in exchange for dismissal of two other counts of first-degree criminal sexual conduct and one count of second-degree criminal sexual conduct. A sentence of thirty-five to two hundred years was imposed for both counts. Thereafter, the defendant moved to withdraw his plea, alleging that his counsel had promised him a minimum sentence shorter than that imposed. Following a hearing, the defendant was granted a new trial, and the original charges were reinstated. After trial, the defendant was convicted by a jury as charged. The court, James S. Thorburn, J., imposed sentences of sixty to two hundred years, seventy to two hundred years, two life sentences, and one sentence of ten to fifteen years. The Court of Appeals, CYNAR, P.J., and ALLEN and WAHLS, JJ., affirmed in an unpublished opinion per curiam (Docket No. 72860).

The defendants in both cases challenge the propriety of

REFERENCES

Am Jur 2d, Criminal Law §§ 314, 580, 581.

Am Jur 2d, New Trial §§ 228, 229.

Propriety of increased punishment on new trial for same offense. 12 ALR3d 978.

imposition of greater sentences upon reconviction following the setting aside of their guilty pleas.

In an opinion by Justice BRICKLEY, joined by Justice ARCHER, and concurred in separately by Justices LEVIN and CAVANAGH, the Supreme Court *held:*

Where a sentence imposed following a retrial is greater than the sentence originally imposed, a presumption of vindictiveness is to be applied where the sentences were imposed by the same judge, regardless of whether retrial was ordered by the trial judge or an appellate court, since an increased sentence in such situations gives rise to a reasonable likelihood of vindictiveness. The presumption may be overcome where the judge at resentencing is shown to have possessed information which was unavailable at the initial sentencing, even if that information did not concern conduct of the defendant occurring after the first trial, but only where the nature of the information on which the increase in the sentence is based is stated on the record and the extent of the increase bears a reasonable relationship to the new information.

1. Under the state's framework of indeterminate sentencing, sentences are based more on an assessment of the offender than the offense. The length of a sentence rests in part upon the perceptions, experience, and judgment of the trial judge. The question of vindictiveness in resentencing must be defined in the context of the present system.

2. Where a second greater sentence is imposed by a judge other than the one who imposed the original sentence, the presumption of vindictiveness should not be invoked. Where the same judge imposes the original sentence and a greater sentence following retrial, the presumption is to be applied, regardless of whether the retrial was ordered by the trial judge or an appellate court. The presumption may be overcome where the judge at resentencing is shown to have possessed information which was unavailable at the initial sentencing, even if the information does not concern conduct which occurred after the first trial, but only where the nature of the information on which the increase in the sentence is based is stated on the record and the extent of the increase bears a reasonable relationship to the new information.

3. In *Mazzie,* the sentences at issue were imposed by different judges, and thus the presumption of vindictiveness does not apply. In *Spangler,* because both sentences were imposed by the same judge, the presumption applies, and, in light of the reasons enunciated by the trial judge at resentencing, the presumption was not overcome. The new data to which the

judge referred at resentencing was the defendant's apparent commission of perjury, accusations he made in the course of the perjury, and the fact that he committed the crime in spite of his ability to earn a substantial income. While perjury may be considered at sentencing, in this case it did not bear a reasonable relationship to the increase in the second sentence.

*Mazzie,* affirmed.

*Spangler,* reversed and remanded.

Justice BOYLE, joined by Chief Justice RILEY and Justice GRIFFIN, concurring in part and dissenting in part, stated that in imposing sentence upon reconviction, a trial court need not rely only upon events which occurred subsequent to an initial conviction, but may consider objective information about the exact nature of the defendant's criminal acts, brought to the attention of the court on retrial, which were not known at the time the original sentence was imposed, to justify imposition of a greater sentence, including the defendant's false testimony insofar as it relates to the defendant's prospects for rehabilitation.

1. Neither the Double Jeopardy Clause nor the Equal Protection Clause imposes an absolute bar to imposition of a more severe sentence upon reconviction. A trial court is not restricted to consideration only of events which occurred subsequent to the first trial, but may consider objective information developed in the second trial which would justify imposition of a greater sentence. Vindictiveness on the part of the sentencing court is not presumed where the possibility is merely speculative. In addition, in order to best suit the defendant's needs and the possibility of rehabilitation, the sentencing court must have the opportunity to consider evidence obviously probative of the possibility, including the defendant's propensity for false testimony.

2. In *Mazzie,* a greater sentence was properly imposed upon reconviction. Two different judges sentenced the defendant, a new trial was granted by the original judge, not an appellate court, and the reasons given in justification of the greater sentence were adequate, thus obviating a presumption of vindictiveness. Upon retrial, new evidence not available to the judge at the first sentencing was presented, which justified the greater sentence. While vindictiveness might be shown in a case where the trial court granted a motion for a new trial, in *Spangler,* a presumption of vindictiveness is not applicable. The judge who imposed both sentences articulated more than adequate reasons for imposing the greater sentence even if a presumption of vindictiveness were to apply. The judge also

granted the defendant's motion for a new trial on the ground that his plea was not voluntary, and, in assessing the defendant's potential for rehabilitation, properly considered his impression that the defendant had testified falsely. In addition, the charges which had previously been dismissed were properly reinstated because it was found that the misconduct of the defendant's counsel had caused the plea not to be voluntary.

137 Mich App 60; 357 NW2d 805 (1984) affirmed.

CRIMINAL LAW — RETRIAL — INCREASED SENTENCES — PRESUMPTION OF VINDICTIVENESS.

Where a sentence imposed following a retrial is greater than the sentence originally imposed, a presumption of vindictiveness is to be applied where the sentences were imposed by the same judge, regardless of whether retrial was ordered by the trial judge or an appellate court; the presumption may be overcome where the judge at resentencing is shown to have possessed information which was unavailable at the initial sentencing, even if that information did not concern conduct of the defendant occurring after the first trial, but only where the nature of the information on which the increase in the sentence is based is stated on the record and the extent of the increase bears a reasonable relationship to the new information.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief, Criminal Division, Research, Training and Appeals, and *Carolyn Schmidt,* Assistant Prosecuting Attorney, for the people in *Mazzie.*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief, Appellate Division, and *Robert F. Davisson* and *Richard H. Browne,* Assistant Prosecuting Attorneys, for the people in *Spangler.*

*Robert E. Slameka* for defendant Mazzie.

*James Sterling Lawrence* for defendant Spangler.

*Amici Curiae:*

*Fred E. Bell* (*Barbara R. Levine,* of counsel) for State Appellate Defender Office, Michigan Appellate Assigned Counsel System, Criminal Defense Attorneys of Michigan, and Prison Legal Services of Michigan, Inc.

BRICKLEY, J. While we agree with Justice BOYLE that the presumption of vindictiveness as applied in *People v Payne,* 386 Mich 84; 191 NW2d 375 (1971), goes beyond the protections necessary to sustain a defendant's due process rights, we cannot agree with the degree to which Justice BOYLE would narrow that protection.

Under our present framework of indeterminate sentencing, sentences are based more on an assessment of the offender than the offense. A natural and unavoidable result of this sentencing scheme, leaving as it does wide discretion to the trial judge, is that the length of a defendant's sentence rests in part upon the perceptions, experience, and judgment of the individual judge before whom he is tried. Were the wisdom of this scheme before us, we might question its fairness and capacity for deterrence. However, since it is not, our views on the question of the vindictiveness in resentencing must be defined in the context of our present system.

We agree with Justice BOYLE that where a second sentence is imposed by a judge other than the judge who imposed the original sentence, we should not invoke a presumption of vindictiveness. Were we to do so, we would be denying the fundamental realities of the above-described system. Different judges may perceive the same information differently, and to invoke a presumption of

vindictiveness because of the fortuitous circumstances of facing one judge or another would make all sentences constitutionally suspect. Thus, we agree with the result she would reach in *People v Mazzie,* since the two sentences in that case were imposed by different judges.

The circumstances are quite different, however, where the same judge imposes both the original sentence and the sentence after retrial. Justice BOYLE, citing guidance from the United States Supreme Court, would hold that where the trial judge himself, rather than an appellate court, orders the retrial, an increased sentence does not give rise to a reasonable likelihood of vindictiveness. We respectfully disagree.

It is no doubt true, as the United States Supreme Court observed in *Texas v McCullough,* 475 US 134; 106 S Ct 976; 89 L Ed 2d 104 (1986), that where a judge orders a retrial he expresses agreement that the defendant's "claims" have merit. However, by ordering a retrial, the judge expresses his approval only of the claims, usually of procedural error, upon which the grant of retrial is based. By granting a retrial, the judge does not necessarily express a belief that the once-convicted defendant is innocent of the crime charged, that a retrial will result in a different verdict, or that the court's time will be put to good use by retrying the defendant. It is, in addition, only natural that trial judges prefer to correct their own errors rather than to have them corrected by an appellate court, and we think that a tendency towards vindictiveness could appear in the former setting as often as in the latter. The problem was bluntly described by Justice Marshall:

> The mere grant of a new trial motion can in no way be considered a guarantee, or even an indication, that the judge will harbor no resentment toward defendant as a result of his decision to

exercise his statutory right to make such a motion. Even where a trial judge believes that the assignments of error are valid, she may still resent being given a choice between publicly conceding such errors and waiting for her judgment to be put to the test on appeal. This will be especially true when the errors alleged, however substantial as a matter of constitutional or statutory law, are considered by the judge not to cast doubt on the defendant's guilt. In such a case, the judge might well come to defendant's sentencing annoyed at having been forced to sit through a trial whose result was a foregone conclusion, and quite ready to vent that annoyance by giving the defendant a sentence stiffer than he otherwise would have received. Even if a trial judge is confident that her conduct of a trial was error-free, she may still grant a new trial if she has any doubts as to whether the courts reviewing her ruling will agree. In this situation, the feelings of resentment already alluded to might be augmented by the judge's annoyance with the courts that review her judgments. [*Texas v McCullough, supra,* 150-151 (Marshall, J., dissenting).]

Since both sentences in *Spangler* were imposed by the same judge, we apply the presumption of vindictiveness. As long as there is such a presumption where the same judge resentences and increases the sentence, we fail to see a distinction where the necessity to resentence is occasioned by that judge rather than by a higher tribunal.

So applied, the question arises in *Spangler* whether the presumption was overcome in light of the reasons enunciated by the trial judge at resentencing. We believe Justice BOYLE is correct in urging adoption of the United States Supreme Court's view, as stated in *McCullough,* that the presumption may be overcome where the judge at resentencing possessed information which was unavailable to him at the initial sentencing, even where that information does not concern conduct

of the defendant occurring *after* the first trial.[1]
The new data referred to by the judge at Spangler's resentencing were defendant's apparent commission of perjury, the fact that such perjury contained allegations of misconduct by a police officer, and the fact that defendant had committed the crime in spite of his ability to earn a substantial income.

We agree with Justice BOYLE's view that perjury, like so many other subjective factors may, within the framework of our present sentencing scheme, be considered by the sentencing judge. Nevertheless, we cannot agree with her disposition of *Spangler* and remand the case for resentencing. Justice BOYLE's approach would permit a judge to vindictively increase a sentence, but nevertheless overcome the presumption by making reference to a new piece of information regarding the defendant no matter how minor that information or how little relevance it might have in determining a fair and appropriate sentence. Instead the presumption of vindictiveness may be overcome only when the extent of the increase in the sentence bears a reasonable relationship to the new information.

Certainly, appellate courts need not second-guess every increased sentence justified by new information. However, in *Spangler,* the judge was fully apprised of the nature and circumstances of the crime when he first imposed sentence after defendant pled guilty. The only new information to which the judge referred at the resentencing was,

---

[1] In *Payne,* we stated that our view as to what information could serve to overcome the presumption of vindictiveness was subject to change if we were supplied with "clarification . . . by the United States Supreme Court . . . ." *Id.* at 96. Justice BOYLE correctly notes that *McCullough* provides such clarification. However, she also seems to indicate that our wait for clarification went to all aspects of the *Payne* decision. In fact, we did not seek "clarification" in *Payne* as to when the presumption should be applied.

as just stated, his "impression" that defendant had perjured himself, the accusations made in the course of that perjury, and the fact that defendant committed the crime in spite of his earning capacity.[2] This data would, according to Justice BOYLE, be sufficient to justify a thirty-five year, i.e., one hundred percent increase in defendant's minimum sentence for first-degree criminal sexual conduct and an increase from thirty-five years to life as the minimum sentence for armed robbery. These increases do not, in our view, bear a reasonable relationship to the new information. We, therefore, hold that the presumption of vindictiveness was not overcome in *Spangler* and remand the case for resentencing in accordance with the principle herein defined.

ARCHER, J., concurred with BRICKLEY, J.

LEVIN and CAVANAGH, JJ. Proceeding arguendo on the premise that perjury may be considered by the sentencing judge, we concur in Justice BRICKLEY's opinion.

---

[2] Justice BOYLE claims that the testimony of the victim provided new information as to the seriousness of the crime. The testimony does indeed recount the commission of a heinous crime. However, the trial judge did not, at resentencing, refer to that testimony. While the judge did refer in general to the cruelty of the crime, the reference did not go beyond the judge's statement at the original sentencing that defendant is "one of the most vicious persons that have come before me . . . ." In addition, the length of the original sentence, thirty-five years, indicates that the judge was indeed aware at that time of the details of the crime.

It is, of course, possible that the judge did have the victim's testimony in mind when he increased the sentence. However, appellate review would be meaningless if we were to presume that any new material raised during the second proceeding must have been the basis for the sentence increase. Therefore trial judges, when resentencing defendants, must state on the record upon what new information they are basing any increase in the length of the sentence. Since in this case the trial judge did not state that the victim's testimony led him to increase the sentence, we do not believe we should consider that testimony as relevant to our review of the sentence increase.

Boyle, J. (*concurring in part and dissenting in part*). The issue raised in these two cases, consolidated for purposes of appeal, is whether the trial courts properly imposed greater sentences upon reconviction after their guilty pleas were set aside.[1] In deciding this issue, we are also required to determine the continued vitality of *People v Payne*, 386 Mich 84; 191 NW2d 375 (1971), in light of recent United States Supreme Court decisions. In both *Mazzie* and *Spangler*, we would affirm the decisions of the Court of Appeals, finding that, in both cases, it was proper to impose a greater sentence upon reconviction. We would further find that the rule articulated in *People v Payne* is no longer viable in this state as it was based on an erroneous interpretation of the due process requirements set out by the United States Supreme Court in *North Carolina v Pearce*, 395 US 711; 89 S Ct 2072; 23 L Ed 2d 656 (1969).[2]

In *Mazzie*, the defendant was initially charged with first-degree murder and kidnapping. He pleaded guilty but mentally ill of second-degree murder as part of a plea bargain and, in return, the premeditated murder and kidnapping counts were dismissed. Mazzie was sentenced to twenty-five to fifty years, in accordance with a sentence bargain. Over a year later, the defendant filed a

---

[1] We note that defendant in *Spangler* views the second sentence as an "increased" sentence. This is not technically correct as the defendant's first sentence was not raised upon reconviction. In actuality, a second independent sentence was imposed which was greater than the first sentence.

[2]

Pending clarification of *Pearce*'s requirements by the United States Supreme Court, we are persuaded that those courts are correct which have interpreted *Pearce* to require that the "identifiable conduct" of the defendant upon which a resentencing judge relies in imposing a stiffer sentence must have occurred *after* the first sentencing. [*Payne, supra*, p 96.]

motion for a new trial, which was granted by the trial court.[3]

A jury trial was held, and, after the defendant was found guilty of second-degree murder and kidnapping, he was sentenced to seventy-five to one hundred fifty years for the murder conviction and to life for the kidnapping conviction. The Court of Appeals affirmed the murder conviction, but reversed the kidnapping conviction on the basis of *People v McMiller,* 389 Mich 425; 208 NW2d 451 (1973).[4] The Court of Appeals opined that the Michigan Supreme Court's interpretation of *Pearce* in *Payne* was incorrect, relying on *Wasman v United States,* 468 US 559; 104 S Ct 3217; 82 L Ed 2d 424 (1984). We granted leave to appeal.

In *Spangler,* the defendant was originally charged with three counts of first-degree criminal sexual conduct, one count of armed robbery, and one count of second-degree criminal sexual conduct. On the first day of trial, Spangler pleaded guilty of one count of first-degree criminal sexual conduct and of the armed robbery count in exchange for dismissal of the other charges. He was sentenced to thirty-five to two hundred years on both counts. Defendant subsequently filed a motion to withdraw his plea, alleging that his former attorney had promised him a minimum sentence below that imposed by the trial court. After a hearing on the matter, the trial judge granted defendant's motion, setting aside the plea of guilty and awarding a new trial.

The prosecutor's motion to reinstate the dis-

---

[3] We note that defendant in *Mazzie* states in his brief that his plea was overturned by the Court of Appeals. The record indicates, however, that this is incorrect, as it was the trial court which granted defendant's motion to withdraw his plea.

[4] We note that the prosecutor has not appealed the reversal of the kidnapping conviction, and we, thus, offer no opinion on the decision of the Court of Appeals in this regard.

missed charges was granted, and the defendant, after a jury trial, was found guilty of three counts of first-degree criminal sexual conduct, one count of armed robbery, and one count of second-degree criminal sexual conduct. He received sentences of sixty to two hundred years, seventy to two hundred years, two life sentences, and ten to fifteen years.

Defendant appealed in the Court of Appeals, which affirmed his conviction. Spangler then sought leave to appeal in this Court, raising several issues, including the issue of the greater sentence upon reconviction. We granted leave to appeal.

I

We begin first with the primary issue in these two cases, namely, under what circumstances may a greater sentence be imposed upon reconviction. The United States Supreme Court first addressed this issue in *Pearce, supra,* p 723:

> [N]either the double jeopardy provision nor the Equal Protection Clause imposes an absolute bar to a more severe sentence upon reconviction. A trial judge is not constitutionally precluded, in other words, from imposing a new sentence, whether greater or less than the original sentence, in the light of events subsequent to the first trial that may have thrown new light upon the defendant's "life, health, habits, conduct, and mental and moral propensities." *Williams v New York,* 337 US 241, 245 [69 S Ct 1079; 93 L Ed 1337 (1949)]. Such information may come to the judge's attention from evidence adduced at the second trial itself, from a new presentence investigation, from the defendant's prison record, or possibly from other sources. The freedom of a sentencing

judge to consider the defendant's conduct subsequent to the first conviction in imposing a new sentence is no more than consonant with the principle, fully approved in *Williams v New York, supra,* that a State may adopt the "prevalent modern philosophy of penology that the punishment should fit the offender and not merely the crime." [337 US] at 247.

The Court further noted:

> Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.
>
> In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal. [*Id.,* pp 725-726.]

While it is true that the above-quoted language has caused considerable confusion and debate, see, e.g., cases cited in *People v Payne, supra,* p 95, it is clear that the focus of the due process concerns expressed in *Pearce* was on the possibility of vindictiveness playing a part in the second sentenc-

ing.[5] To address this concern the Court fashioned a prophylactic[6] rule applying a " 'presumption of vindictiveness, which may be overcome only by objective information in the record justifying the increased sentence.' " *United States v Goodwin,* 457 US 368, 374; 102 S Ct 2485; 73 L Ed 2d 74 (1982).

This Court, in *Payne,* interpreted language in *Pearce,* which stated that the reasons posited for a greater sentence must be based on "identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding," 395 US 726. We held, in *Payne,* that the imposition of a harsher sentence following a successful appeal was constitutionally impermissible where it was not supported by "(known) conduct of the defendant occurring after the first sentencing which would support a stiffer sentence." *Id.,* p 96.

In *Payne,* pp 95-96, we concluded:

Does "occurring after . . . the original sentencing" refer to defendant's "identifiable conduct" or to acquisition of "objective information" regarding his conduct before or after original sentencing? Since *Pearce* was decided, lower courts have split over interpretation of the above language. Some opinions hold that only conduct of the defendant occurring after his original sentencing may be relied upon by the sentencing judge who imposes a harsher penalty. . . . Others hold or indicate that regardless of when the defendant's "identifiable conduct" occurred, if it first comes to a sentencing judge's attention after the time of the first sen-

---

[5] In *Texas v McCullough,* 475 US 134, 138; 106 S Ct 976; 89 L Ed 2d 104 (1986), the Court stated, "[b]eyond doubt, vindictiveness of a sentencing judge is the evil the Court sought to prevent rather than simply enlarged sentences after a new trial."

[6] Professor Grano has defined prophylactic rules as "rules designed to assure that constitutional violations will not or did not occur." Grano, *Prophylactic rules in criminal procedure: A question of article III legitimacy,* 80 NW U L R 100, 163 (1985).

tencing it may be relied upon in support of a harsher penalty.

\* \* \*

Pending clarification of *Pearce's* requirements by the United States Supreme Court, we are persuaded that those courts are correct which have interpreted *Pearce* to require that the "identifiable conduct" of the defendant upon which a resentencing judge relies in imposing a stiffer sentence must have occurred after the first sentencing.

While in *Payne* this Court did not specifically adopt the presumption of vindictiveness rationale of *Pearce,* we later applied the "*Pearce* presumption" in a case in which two different judges sentenced the defendant, and the second did not know the length of the original sentence:

It is thus not decisive in this case that the resentencing judge lacked actual "vindictiveness." . . . The resentencing judge did not point to any conduct of the defendant since the original sentencing as having influenced the sentence finally imposed.

\* \* \*

We hold that the rule of *Pearce* applies to these circumstances. [*People v Jones,* 403 Mich 527, 539; 271 NW2d 515 (1978).]

In *Texas v McCullough,* 475 US 134; 106 S Ct 976; 89 L Ed 2d 104 (1986), the United States Supreme Court clarified its holding in *Pearce.* In *McCullough,* the defendant was tried before a jury and convicted of murder. The jury, as allowed under Texas law, sentenced McCullough to twenty years, after which the trial judge granted defendant's motion for a new trial. McCullough was again found guilty and elected to have the judge impose sentence. A sentence of fifty years was

ordered. The Texas Court of Appeals reversed the decision on the basis of its understanding that *Pearce* required that a longer sentence upon retrial could only be imposed on the basis of conduct of the defendant occurring after the original trial.

The United States Supreme Court reversed and declined to apply a *Pearce* presumption of vindictiveness. With regard to the presumption, the Court noted:

> The *Pearce* requirements thus do not apply in every case where a convicted defendant receives a higher sentence on retrial. Like other "judicially created means of effectuating the rights secured by the [Constitution]," *Stone v Powell,* 428 US 465, 482 [96 S Ct 3037; 49 L Ed 2d 1067] (1976), we have restricted application of *Pearce* to areas where its "objectives are thought most efficaciously served," 428 US at 487. Accordingly, in each case, we look to the need, under the circumstances, to "guard against vindictiveness in the resentencing process." *Chaffin v Stynchcombe,* 412 US 17, 25 [93 S Ct 1977; 36 L Ed 2d 714] (1973) (emphasis omitted). [*Id.,* p 138.][7]

The Court found in *McCullough* that the *Pearce* presumption of vindictiveness was inappropriate because the trial judge, herself, had granted the defendant's motion for new trial. "Granting McCullough's motion for a new trial hardly suggests any vindictiveness on the part of the judge to-

---

[7] The United States Supreme Court expressly declined to apply a presumption of vindictiveness in a number of cases before *McCullough.* See *Colten v Kentucky,* 407 US 104; 92 S Ct 1953; 32 L Ed 2d 584 (1972) (two-tiered trial system); *Chaffin v Stynchcombe, supra* (greater sentence imposed by jury unaware of first conviction); *Bordenkircher v Hayes,* 434 US 357; 98 S Ct 663; 54 L Ed 2d 604 (1978) (prosecutor sought conviction on a greater offense after defense refused to plead guilty to lesser crime); *United States v Goodwin,* 457 US 368; 102 S Ct 2485; 73 L Ed 2d 74 (1982) (prosecutor added felony charge after defendant demanded jury trial for misdemeanor offense).

wards him." *Id.,* pp 138-139. The Court further noted:

> The presumption of *Pearce* does not apply in situations where the possibility of vindictiveness is this speculative, particularly since the presumption may often "operate in the absence of any proof of an improper motive and thus . . . block a legitimate response to criminal conduct." *United States v Goodwin,* 457 US 368, 373 [102 S Ct 2485; 73 L Ed 2d 74] (1982). [*Id.,* p 139.]

It was further found in *McCullough* that the presumption was inapplicable because the sentences had been imposed by distinct entities. The jury had imposed the first sentence, and the trial judge had sentenced the defendant at the second trial. The Court noted that the *Pearce* presumption was derived from a judge's " 'personal stake in the prior conviction,' . . . a statement clearly at odds with reading *Pearce* to answer the two-sentencer issue." *Id.,* p 140, n 3.[8]

The Court in *McCullough* also clarified the requirement in *Pearce* that a trial court justify a greater sentence upon reconviction by affirmatively stating reasons "based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding," *Pearce,* p 726, in a case where a presumption was appropriate. The Court concluded that even if the presumption were to apply in this case, which it did not, the findings of the trial judge were adequate to overcome that presumption.

[8] The Supreme Court acknowledged that, in *Pearce,* the sentences were also imposed by different judges. However, it noted that this fact may not have been drawn to the Court's attention and that it did not "focus on it as a consideration for its holding." *Id.,* p 140, n 3. The Court also noted in *Wasman, supra,* p 565, that in *Pearce* the state had offered no evidence whatever to justify the increased sentence: "it had not even 'attempted to explain or justify' the greater penalty."

The trial judge in *McCullough* had based the greater sentence on two factors: the testimony of two new witnesses, which increased the credibility of the state's key witness and detracted from the defendant's credibility, and that of his witness, which " 'shed new light upon [McCullough's] life, conduct, and his mental and moral propensities,' " *McCullough,* p 143, and the information, not before the jury in the first trial, that defendant had been released from confinement only four months before committing the crime. Commenting on this new information, the Court observed:

> To foreclose reliance on the kind of pertinent new information developed in the second trial would be wholly incompatible with modern sentencing standards. This new objective information also amply justified McCullough's increased sentence. [*Id.*]

*McCullough* has therefore clarified the language in *Pearce* and set to rest arguments about the type of information which will satisfy due process requirements in a case where a presumption of vindictiveness is appropriate.

> [The language in *Pearce*] was never intended to describe exhaustively all of the possible circumstances in which a sentence increase could be justified. Restricting justifications for a sentence increase to *only* "events that occurred subsequent to the original sentencing proceedings" could in some circumstances lead to absurd results.
>
> *  *  *
>
> Nothing in the Constitution requires a judge to ignore "objective information . . . justifying the

increased sentence."[9] [*McCullough, supra,* pp 141-142.]

The rule set out in *Payne* was based entirely on the requirements enunciated in *Pearce* and was only viable, in the specific words of *Payne,* "[p]ending clarification of *Pearce*'s requirements by the United States Supreme Court . . . ." *Id.,* p 96. As this clarification has now been given in *McCullough,* we are called upon to determine the continued viability of the *Payne* rule. We would find that the United States Supreme Court expressly rejected the requirement in *Payne* that in imposing an enhanced sentence upon reconviction the judge rely only on identifiable conduct which occurred after the original sentencing. Thus, we hold that the requirements of *Payne* are no longer appropriate and decline to follow them in cases tried in this state. We are persuaded that *McCullough* sets out the appropriate requirements in this area, and we adopt the *McCullough* conclusion that "[n]othing in the Constitution requires a judge to ignore 'objective information . . . justifying the increased sentence.'" *Id.,* p 142. We, therefore, analyze the two cases before us using the *McCullough* rationale.

In *Mazzie,* the defendant tendered a plea of guilty but mentally ill of second-degree murder before Recorder's Court Judge Robert Evans and was sentenced to a term of twenty-five to fifty years. At the time of sentencing, the defendant told the judge, "I invited him [the victim] into the house, your Honor, and we had a hassle and we

---

[9] The Court acknowledged defendant's claim that adoption of the state's arguments would have a deleterious effect on the right to appeal but found:

> To be sure, a defendant may be more reluctant to appeal if there is a risk that new, probative evidence supporting a longer sentence may be revealed on retrial. But this Court has never recognized this "chilling effect" as sufficient reason to create a constitutional prohibition against considering relevant information in assessing sentences. [*Id.,* p 143.]

were fighting and I strangled him." Over a year after the sentence, Judge Evans granted defendant's motion for a new trial, which was presided over by Judge Leonard Townsend. After the jury convicted the defendant, Judge Townsend imposed the second sentence.

Paralleling the situation in *McCullough,* the sentences in *Mazzie* were imposed by two different judges, and a new trial was granted by the original judge, not by an appellate court. Thus, we would find that a presumption of vindictiveness is not applicable in this case and that a greater sentence was properly imposed upon reconviction.

The discretion accorded to trial judges by the Legislature and in the sentencing guidelines is an implicit recognition of the existential fact that individual judges may have distinct views of appropriate sentences for a given offender. To assume that a second sentence is vindictive in such circumstances, is to assume, without any logical support, that the first sentence was "correct." It no more follows that a higher sentence is a vindictive penalty for seeking a new trial than that the first sentencer merely imposed a lenient penalty. Simply stated, the logical inferences from these circumstances do not support the result urged upon us.[10]

Further, assuming arguendo that a presumption of vindictiveness was appropriate in this case, the reasons given by the second judge were more than adequate to justify the greater sentence.[11] At the

[10] It must be noted that *McCullough* does not preclude a defendant, even without a presumption of vindictiveness, from presenting evidence which would convince an appellate court that this was, in actuality, the basis of a greater sentence. The appellate courts, however, in such a case, may not presume vindictiveness without adequate evidence in support of such an argument.

[11] In *People v Coles,* 417 Mich 523; 339 NW2d 440 (1983), this Court required that judges articulate the reasons for sentences given in order to facilitate appellate review.

second trial, a great deal of evidence was presented which was not available to the judge at the first sentencing.

As Judge Townsend noted:

> There was evidence which is not in Judge Evans' plea or came to his attention that there were notes written by Mr. Mazzie with definite sexual overtones and there were even some threats to torture the victim.
>
> The Court [at the trial] also heard a report of the medical examiner. His report showed that there was an injury to the scrotum area of the victim. He also stated that it took four or five minutes for a person to die from strangulation. . . .[12]
>
> Then I had to take into consideration also the testimony of the defense psychiatrist, Mr. Robey. Mr. Robey testified that, in his opinion, Mr. Mazzie is an extremely dangerous person.
>
> * * *
>
> Now Judge Evans only had one sentence. "We were fighting and I strangled him." That is all he had. I had all the other evidence to suggest all sorts of sadistic acts; sexual acts, strangulation, notes that were written suggesting torture to the victim, the fact that there was a jury that found no mental illness in Mr. Mazzie and, under those circumstances, the Court does not feel constrained or in any way under any legal obligation to follow the sentence that was imposed by Judge Evans.[13]

12 The defendant in *Mazzie* was charged with the strangulation death of a twelve-year-old newspaper carrier. The boy's body was found hidden in Mazzie's attic along with parts of his bicycle. His hands and feet were bound and a piece of black electrical cord and a length of cloth were found around the victim's neck.

13 It must be noted that Judge Evans presided over the *Walker* hearing in this case. While there is no transcript of the hearing, the judge's notes, which are part of the record, do not indicate that the additional information, on which Judge Townsend based the second sentence, was ever discussed. At the most, Judge Evans would have been aware of the confessions signed by Mazzie. The first merely implied that the death was an accident while the victim and Mazzie

Clearly, the judge in *Mazzie* relied on " 'objective information . . . justifying the increased sentence.' " *McCullough,* p 142. We, therefore, would affirm the decision of the Court of Appeals in this case and find that the defendant's second sentence was proper.

II

In *Spangler,* Oakland Circuit Court Judge James Thorburn originally accepted the defendant's plea of guilty and sentenced him to two concurrent terms of thirty-five to two hundred years in prison. After a hearing on defendant's motion to withdraw the plea on the basis of his attorney's promise of a lesser minimum sentence, Judge Thorburn granted Spangler a new trial, finding that the plea was not voluntarily given. Judge Thorburn then presided over defendant's jury trial and ultimately imposed a longer sentence.

We would not hold as Justice BRICKLEY suggests that vindictiveness could not be shown where the trial court granted a motion for new trial. See n 10. We simply would find that the situation in *Spangler* is not one in which this Court should apply a presumption of vindictiveness. As the Court in *McCullough,* pp 138-139, noted:

> Granting McCullough's motion for a new trial hardly suggests any vindictiveness on the part of the judge towards him. "[U]nlike the judge who

---

were fighting. The second admitted sexual feelings for the victim, but again implied that the victim was killed during a struggle after the victim took a swing at Mazzie. The confession does not indicate that there were sexual notes written to and about the victim. In addition, Mazzie did not discuss in his confession his plans to torture the victim or sexual activity with the victim, both of which were evidenced at the trial. Also, as Judge Townsend noted, the confession does not evidence the amount of time required to effect strangulation or the fact that the psychiatrist's evaluation of Mazzie indicated that he was an extremely dangerous person.

has been reversed," the trial judge here had "no motivation to engage in self-vindication." *Chaffin*, 412 US at 27. In such circumstances, there is also no justifiable concern about "institutional interests that might occasion higher sentences by a judge desirous of discouraging what he regards as meritless appeals." *Ibid.* In granting McCullough's new trial motion, Judge Harney went on record as agreeing that his "claims" had merit. Presuming vindictiveness on this basis alone would be tantamount to presuming that a judge will be vindictive towards a defendant merely because he seeks an acquittal. . . . We decline to adopt the view that the judicial temperament of our Nation's trial judges will suddenly change upon the filing of a successful post-trial motion.[14]

In addition, even if a presumption of vindictiveness were to apply, as in *Mazzie,* the judge in *Spangler* articulated adequate reasons for imposing the greater sentence. As he noted at sentencing:

Your whole conduct has been a fraud on the system and a fraud on the Court, in addition to these horrible acts that you performed. An innocent victim, minding her own business, working at her occupation and you subjected her to the most cruel and inhumane treatment it's possible to give to a human being, a fellow human being.
. . . You have talent. The record—your own

---

[14] In one of his issues raised in this Court and in the Court of Appeals, the defendant appears to be attempting to show specific evidence of vindictiveness. Judge Thorburn, in his original sentencing, noted that the defendant was "one of the most vicious persons that has come before me in my tenure as a judge." It appears that this was the ground on which the defendant moved, both before Judge Thorburn and the presiding judge, to have the case heard before another judge. We agree with both judges who heard the motion that no prejudice was shown. Judge Thorburn was merely articulating, as required by this Court, the reason for the sentence imposed on the defendant. This is not an indication of vindictiveness toward defendant, as seen by the fact that the judge directly, thereafter, granted defendant a new trial.

testimony seemed to indicate that you could make
$60,000 a year running a business. You had run
several businesses successfully. You had all the
opportunities in the world that other people do not
have and yet you would conduct yourself in this
bestial manner.

When Judge Thorburn heard defendant's guilty
plea, Spangler admitted the minimum facts neces-
sary to make out the elements of one count of
first-degree criminal sexual conduct and one count
of armed robbery.

*Q.* State in your own words what you did.
*A.* That I inserted my finger into the victim's
vagina, and I took her money.
*Q.* At that time were you armed with a danger-
ous weapon?
*A.* Yes.
*Q.* What was the weapon? What kind of weapon
was it?
*A.* A razor blade. A razor.
*Q.* Was it a straight razor as distinguished from
a razor blade?
*A.* Yes.
*Q.* It was a straight razor?
*A.* Yes.
*Q.* And she permitted you to insert your finger
into her vagina and permitted you to take her
money because you had placed her in fear and
apprehension with the razor?
*A.* Yes.

At trial, as Judge Thorburn noted in his refer-
ence to "these horrible acts . . . performed [on]
[a]n innocent victim," the testimony of the victim
brought out for the first time the fear and debase-
ment she sustained as a result not only of the
single manual penetration the defendant had ac-
knowledged during the plea procedure, but also
penetration by defendant's penis and tongue, fon-

dling of her breasts and coerced fondling of defendant's penis.[15]

[15] Q. Okay. Can you describe that straight razor?

A. A typical hairdresser's straight razor with a, you know, razor and a guard.

Q. All right. At that point in time were you able to see a handle on it?

A. I just saw the razor part.

Q. Okay. And, did he say anything else?

A. He told me not to move.

Q. Did he say anything else?

A. He told me if I moved he would cut me.

Q. All right. Then what happened?

A. He told me to crawl over to the window.

*   *   *

Q. Okay. And, did you do that?

A. Yes. He told me to crawl and I started to get up to crawl and he said, "I said crawl!"

*   *   *

A. [H]e walked over to the front door with the towel, he walked back over in the phone area and then he told me to tell them that a black man robbed you. And I agreed to it. I agreed to anything.

Q. Then what happened?

A. Then he came back over by me and turned me over on my back and he tied one of the towels over my eyes.

Q. Okay. And, at that point in time, were you wearing your glasses?

A. He took my glasses off.

Q. Okay. And, was there any other conversation that occurred then?

A. Yes.

Q. What was that?

A. He told me—when he turned me over and tied the towels over my eyes, he was straddled across me and he told me he wasn't going to rape me.

Q. Okay. Then what happened?

A. He pushed my blouse up.

*   *   *

Q. Then what happened?

A. He pushed my blouse up and he tried to move my bra and he told me to lift up. And he undid my bra.

Q. And then what happened?

A. And then he fondled me.

Q. Okay. And, would that be in your chest area, on your breast?

*A.* Yes.

*Q.* Then what happened?

*A.* He asked me how old I was.

*Q.* Okay. Did you answer him?

*A.* Yes. I told him I was twenty-nine.

*Q.* Then what happened?

*A.* Then he undid my jeans and pulled my jeans and my underwear down.

*Q.* How far was he able to pull your jeans and your underwear down.

*A.* Not real far, just to my—above my feet because my feet were tied so it didn't go real far.

*Q.* Now . . .

*A.* Like not off.

*Q.* (Continuing) . . . describe how your feet were tied.

*A.* Each ankle was tied but not right together. There was—I could walk, you know, huddle, so I would say they were tied each one but about that far apart.

*Q.* Okay. After he pulled your blue jeans and underwear down, what happened then?

*A.* He put his finger inside of me.

*Q.* Okay. When you say inside of you, do you mean inside of your vagina?

*A.* Yes.

*Q.* And did he penetrate your vagina with his finger?

*A.* Yes.

*      *      *

*Q.* Now, in relation to what he did after he put his finger into you, would you relate to the jury what happened then?

*A.* He put his tongue in me.

*Q.* Okay. And when you say in you, you mean where?

*A.* In my vagina.

*Q.* Okay. And, then what happened?

*A.* Then he told me to stand up.

*Q.* Okay. And, were you able to do that?

*A.* Yes.

*Q.* Okay. And, when you stood up, which way were you facing?

*A.* The back of the shop. He told me to turn around; he turned me around.

*Q.* And where was he in relation to you?

*A.* Standing right next to me.

*Q.* Okay. And, then what happened?

*A.* He put my head—I was still standing up when he put my head down on the chair in front of me.

*Q.* Okay. And, what kind of chair was it?

*A.* A white vinyl chair, a sitting chair, a reading chair.

The additional evidence alluded to by the judge
was more than adequate to justify the greater
sentence, even if a presumption of vindictiveness
were to apply in this case. As is frequently the
case, the factual basis for the plea consisted of the
minimal statement of the elements necessary to
support the charge. The evidence at trial, in con-
trast, was a re-creation of the incident, which
provided the Court with far more insight into the
effect upon the victim, the defendant's potential
for rehabilitation, and the potential damage posed
by the defendant to the community. The evalua-

*Q.* Okay. And, what part of the chair did he put your head
onto?

*A.* The seat part.

*Q.* Okay. And, your legs and hips, what position were they
in?

*A.* Facing the back.

*Q.* Were they [sic] still standing or were you sitting?

*A.* Yes.

*Q.* And, where was the back of the chair in relation to your
body?

*A.* In front of me.

*Q.* Okay. Now, what happened then?

*A.* My hands were tied behind my back. He pushed his penis
in my hands and he told me to make it hard.

*Q.* Okay. And, then what happened?

*A.* Then he pushed me down on the floor.

*Q.* Okay. And, then what happened?

*A.* Then, he put his penis inside of me.

*Q.* Okay. And, then what happened?

*A.* He told me, he started moving, he told me, "Fuck! You
know how to fuck, don't you!"

*Q.* Okay. And, what did you do?

*A.* I did. I moved.

* * *

*Q.* Okay. And, what happened then?

*A.* I still had the blindfold on so I couldn't see him and he
was walking around and I asked him if I could have my clothes
on and he said no.

*Q.* Okay, then what happened?

*A.* Then he told me not to tell anybody that I was raped
because nobody would believe me.

tion of an individual who so terrorizes a victim
that the victim "agreed to anything," who blind-
folds and binds the victim's hands and feet, and
who engages in five acts of criminal sexual con-
duct[16] is a different process than that which occurs
when the trial judge evaluates the plea-offering
defendant, even with the benefit of a presentence
report.

### III

Defendant in *Spangler* also contends that a
greater sentence was impermissibly imposed be-
cause the trial judge also felt that the defendant's
defense had been a "fraud." Although other ade-
quate reasons were given for the sentence, even if
a presumption of vindictiveness were applied, we
consider it appropriate to speak to this issue for
the guidance of the bench and bar.

This Court, in *People v Anderson,* 391 Mich 419;
216 NW2d 780 (1974), opined that it was not
permissible to allow a trial judge to take into
consideration at sentencing his impression that
the defendant was protecting a codefendant. The
Court regarded this circumstance as

the equivalent of the error found in *Scott v United
States,* 135 US App DC 377; 419 F2d 264 (1969),
wherein the United States Court of Appeals for
the District of Columbia Circuit rejected the argu-
ment that a judge may impose additional punish-
ment because he believes the defendant committed
perjury, saying that if the government wishes to
prosecute for the independent substantive offense
of perjury it may do so and that in such a proceed-

---

[16] In light of the testimony by the victim at trial, we do not
characterize the new data available to the judge as the "apparent
commission of perjury, . . . allegations of misconduct by a police
officer [or] . . . that defendant had committed the crime in spite of
his ability to earn a substantial income." (*Ante,* p 36.)

ing the defendant would be entitled to all the
protections of a criminal trial. [*Id.,* p 423.]

On the basis of this language and without further
analysis, the Court of Appeals in *People v McCon-
nell,* 122 Mich App 208; 332 NW2d 408 (1982),
vacated on other grounds 418 Mich 881 (1984),
found that the trial judge had erred in increasing
defendant's minimum sentence because of his im-
pression that the defendant had lied under oath.

*Anderson, supra,* is not persuasive precedent for
the situation in this case. Although the facts are
not set forth in the opinion, the majority in *Ander-
son* characterized the sentence error as punish-
ment for the defendant's exercise of his "right to
remain silent at the trial." *Id.,* p 423. A defen-
dant's Fifth Amendment right to remain silent is
clearly not implicated where, as here, the defen-
dant has testified. In addition, the view taken in
*Scott* of the use of a defendant's false testimony
has been considered and expressly rejected by the
United States Supreme Court in *United States v
Grayson,* 438 US 41; 98 S Ct 2610; 57 L Ed 2d 582
(1978).

In *Grayson,* the federal district judge had given,
as the reason for the sentence imposed on the
defendant, the fact that it was his view that the
defendant's " 'defense was a complete fabrication
without the slightest merit whatsoever.' " *Id.,* p 44.
The Court of Appeals for the Third Circuit had
vacated the sentence, applying the rule from a
prior case that a sentencing judge may not add a
penalty because he believes that the defendant
lied. *Poteet v Fauver,* 517 F2d 393 (CA 3, 1975).
The Supreme Court granted certiorari to resolve
conflicts in the Courts of Appeals as to the permis-
sibility of allowing judges to increase sentences
because of an impression that the defendant had
committed perjury while testifying.

The Supreme Court found in *Grayson* that the trial judge's need to tailor a sentence to the individual defendant required that all evidence, including evidence that defendant lied, be taken into consideration. The Court noted, quoting from *Scott v United States,* that the United States Court of Appeals for the District of Columbia stood alone in directly rejecting the probative value of defendant's false testimony.

As the Court opined, quoting from Judge Marvin Frankel's analysis for the United States Court of Appeals for the Second Circuit:

> "The effort to appraise 'character' is, to be sure, a parlous one, and not necessarily an enterprise for which judges are notably equipped by prior training. Yet it is in our existing scheme of sentencing one clue to the rational exercise of discretion. If the notion of 'repentance' is out of fashion today, the fact remains that a manipulative defiance of the law is not a cheerful datum for the prognosis a sentencing judge undertakes. . . . Impressions about the individual being sentenced— the likelihood that he will transgress no more, the hope that he may respond to rehabilitative efforts to assist with a lawful future career, the degree to which he does or does not deem himself at war with his society—are, for better or worse, central factors to be appraised under our theory of 'individualized' sentencing. The theory has its critics. While it lasts, however, a fact like the defendant's readiness to lie under oath before the judge who will sentence him would seem to be among the more precise and concrete of the available indicia." *United States v Hendrix,* 505 F2d 1233, 1236 ([CA 2] 1974). [*Grayson, supra,* p 51.]

We find, as have most of our sister states,[17] the

---

[17] See *People v Corrigan,* 129 Ill App 3d 787; 473 NE2d 140 (1985); *People v Redmond,* 29 Cal 3d 904; 176 Cal Rptr 780; 633 P2d 976

analysis of *Grayson* persuasive, and we would expressly reject the dicta of *Anderson.* If judges are to tailor sentences to best suit the individual defendant's needs and the possibility of rehabilitation, they must be given the opportunity to consider such obviously probative evidence as the defendant's propensity for false testimony. We find it most compelling that the rule here advocated by the defendant would only serve to impose an artificial restriction on the evaluative process which any trial judge in fact engages in in reaching a decision as to an appropriate sentence for a given defendant.[18] Such rules undermine confidence in the appellate judiciary and,

> the efficacy [of such an] "exclusionary rule" is open to serious doubt. No rule of law, even one garbed in constitutional terms, can prevent improper use of firsthand observations of perjury. The integrity of the judges, and their fidelity to their oaths of office, necessarily provide the only, and in our view adequate, assurance against that. [*Grayson, supra,* p 54.]

This is not a case where the defendant's constitutional right to remain silent is being used against him, but rather is an example of the kind of evidence necessary for a proper sentencing decision. We are unconvinced, as was the United States Supreme Court, that this evidence has an impermissible chilling effect on the defendant's constitutional rights.

(1981); *People v Meeks,* 81 Ill 2d 524; 44 Ill Dec 103; 411 NE2d 9 (1980); *Pyrdol v State,* 617 P2d 513 (Alas, 1980); *People v Wilson,* 43 Colo App 68; 599 P2d 970 (1979); Anno: *Propriety of sentencing judge's consideration of defendant's perjury or lying,* 34 ALR4th 888.

[18] The sentencing guidelines, for example, specifically allow trial judges to consider at sentencing their own belief that the defendant committed the higher crime when a plea of guilty has been accepted to a lesser offense.

Grayson's argument that judicial consideration of his conduct at trial impermissibly "chills" a defendant's statutory right, 18 USC 3481 (1976 ed), and perhaps a constitutional right to testify on his own behalf is without basis. The right guaranteed by law to a defendant is narrowly the right to testify truthfully in accordance with the oath—unless we are to say that the oath is mere ritual without meaning. This view of the right involved is confirmed by the unquestioned constitutionality of perjury statutes, which punish those who willfully give false testimony. See, e.g., 18 USC 1621 (1976 ed); cf. *United States v Wong,* 431 US 174 [97 S Ct 1823; 52 L Ed 2d 231] (1977). Further support for this is found in an important limitation on a defendant's right to the assistance of counsel: Counsel ethically cannot assist his client in presenting what the attorney has reason to believe is false testimony. See *Holloway v Arkansas,* 435 US 475, 480 n 4 [98 S Ct 1173; 55 L Ed 2d 426] (1978); ABA Project on Standards for Criminal Justice, The Defense Function § 7.7(c), p 133 (Compilation 1974). Assuming, *arguendo,* that the sentencing judge's consideration of defendants' untruthfulness in testifying has any chilling effect on a defendant's decision to testify falsely, that effect is entirely permissible. There is no protected right to commit perjury. [*Grayson, supra,* p 54.]

We would hold, therefore, that a sentencing judge may consider a defendant's false testimony in imposing a sentence, insofar as it relates to the prospects for rehabilitation. Judge Thorburn, in enhancing Spangler's sentence, noted:

Your theory of the case was . . . a flight of fancy. It wasn't based on any reasonable interpretation of any fact, but it was solely out of your own testimony and it was obviously false and perjured testimony and it was to the effect that the officer in charge of the case had framed you by imposing your fingerprints, by putting you in a

chair which was the chair which was from the
beauty parlor and used in the—as part of the res
gestae circumstances of the crime.

That obviously was a flight of fancy and the jury
didn't believe it and I didn't believe it, and that,
too, enhanced the crime. It shows that you have no
intention of trying to rehabilitate yourself.

We would find that the judge permissibly consid-
ered, in assessing Spangler's potential for rehabili-
tation, his impression that the defendant had
falsely testified. In affirming the Court of Appeals
we observe, as did the Supreme Court in *Grayson,
supra:*

> Nothing we say today requires a sentencing
> judge to enhance, in some wooden or reflex fash-
> ion, the sentences of all defendants whose testi-
> mony is deemed false. Rather, we are reaffirming
> the authority of a sentencing judge to evaluate
> carefully a defendant's testimony on the stand,
> determine—with a consciousness of the frailty of
> human judgment—whether that testimony con-
> tained willful and material falsehoods, and, if so,
> assess in light of all the other knowledge gained
> about the defendant the meaning of that conduct
> with respect to his prospects for rehabilitation and
> restoration to a useful place in society. [*Id.,* p 55.]

IV

The defendant in *Spangler* raises two further
issues in this Court. First, Spangler claims that
the circuit court improperly reinstated the charges
which had previously been dismissed pursuant to
the plea bargain, citing this Court's decision in
*People v McMiller,* 389 Mich 425; 208 NW2d 451
(1973).

In *McMiller,* this Court held that a charge may
not be reinstated after a plea has been set aside on

appeal for a defect in the prescribed procedure for taking a guilty plea. We stated, in that case:

> The prescribed procedure for taking a guilty plea can readily be observed. Compliance in every case with the prescribed procedure is, we are convinced, essential to the integrity of the plea-taking process.
>
> *       *       *
>
> A prosecutor can protect himself against being forced to try a defendant on a lesser offense by calling the attention of the judge, before he accepts a plea of guilty, to any failure to comply with the prescribed procedure for taking such a plea. [*Id.,* pp 433-434.]

We would find *McMiller* inapplicable in the case at bar. Spangler's plea-based conviction was not reversed on appeal for a defect in the plea-taking procedure. Rather, the trial court set aside the plea because it found that the misconduct of the defendant's own counsel had caused the plea not to be voluntary. His original attorney had told Spangler that the judge had promised a minimum sentence below that ultimately imposed by the court if he would offer a guilty plea pursuant to the plea bargain.[19]

In fact, the proper procedure under the then-applicable GCR 1963, 785.7 was followed, and the judge specifically asked the defendant at that time:

Do you understand that no other promises have

---

[19] The trial judge, on his own recollection and after hearing testimony, determined that the promise had, in fact, been a fabrication of defendant's original attorney. For the first time in this Court, defendant claims that a hearing should have been held to determine if the trial judge or the attorney was incorrect. The trial judge heard testimony from the prosecutor, a deputy from the Oakland County Sheriff's Office, the defendant's original attorney, and the defendant's family and held that he had not made such a promise and that it was not his practice to do so. We decline to consider further this newly raised issue.

been made to you by anyone, *that I have not
agreed with anyone about anything,* that no one
has threatened you, and that this guilty plea is
your own free choice? [Emphasis added.]

to which Spangler responded, "Yes."[20]

---

[20] The full examination of Spangler at the plea taking was as
follows:

*Q.* Your name is Richard Lee Spangler?

*A.* Yes.

*Q.* Are you pleading guilty to Count II, First Degree Criminal
Sexual Conduct and Count IV, Robbery Armed, with a maxi-
mum sentence on each count of life imprisonment and a
minimum sentence on each count of one year in prison, because
you are guilty?

*A.* Yes.

*Q.* Do you understand that there is no probation permissible
if you plead guilty?

*A.* Yes.

*Q.* Have you been promised by the prosecutor a dismissal of
Counts I, III, V and VI in case No. 82-52766, and the dismissal of
Case 82-52767 and Case 82-53022?

*A.* Yes.

*Q.* On June 16, 1981 at the Township of White Lake, Oakland
County, Michigan, Count II, that you did with another person,
to-wit, J. Moore, engage in sexual penetration, to-wit, by then
and there inserting his finger into victim's vagina while armed
with a weapon, and Count IV, did assault a certain person, to-
wit, J. Moore while being armed with a dangerous weapon, a
razor, and did then and there feloniously rob, steal and take
from the person of said victim or in her presence United States
currency.

Has your lawyer read and explained these charges to you?

*A.* Yes.

*Q.* Do you understand them and are those facts true?

*A.* Yes.

*Q.* State in your own words what you did.

*A.* That I inserted my finger into the victim's vagina, and I
took her money.

*Q.* At that time were you armed with a dangerous weapon?

*A.* Yes.

*Q.* What was the weapon? What kind of a weapon was it?

*A.* A razor blade. A razor.

*Q.* Was it a straight razor as distinguished from a razor
blade?

*A.* Yes.

*Q.* It was a straight razor?

*A.* Yes.

The prosecutor was unaware of the attorney's promises to Spangler, as was the court, and could not have remedied the problem during the plea-taking procedure. It was only after the plea had been accepted that the issue was raised by defendant.

Because we would find, as did the Court in *People v Tillman,* 406 Mich 898; 276 NW2d 456 (1979), that *McMiller* is not applicable to the facts in this case, we have no occasion to consider its

---

*Q.* And she permitted you to insert your finger into her vagina and permitted you to take her money because you had placed her in fear and apprehension with the razor?

*A.* Yes.

*Q.* Do you understand that in pleading guilty you will not have a trial of any kind, that you give up your right to a jury trial and to a trial by a judge?

*A.* Yes.

*Q.* Do you understand that by pleading guilty you also give up the following trial rights: To be presumed innocent until proven guilty beyond a reasonable doubt; to have at your request all witnesses appear at your trial and be asked questions by your lawyer; to testify or remain silent during the trial and not have your silence used against you?

*A.* Yes.

*Q.* Do you understand that if you have been previously convicted of a felony you may be charged as an habitual offender and the maximum sentence may be increased?

*A.* Yes.

*Q.* Do you understand that if you are on probation or parole this guilty plea could result in your being sentenced for violating probation or parole?

*A.* Yes.

*Q.* Do you state and understand that no other promises have been made to you by anyone, that I have not agreed witn anyone about anything, that no one has threatened you, and that this guilty plea is your own free choice?

*A.* Yes.

*The Court:* Do both counsel agree that to the best of their knowledge the facts recited by the defendant are true and that this plea has been lawfully made?

*Mr. Lichtman:* Yes, your Honor.

*Mr. Hatt:* Yes, your Honor.

*The Court:* The plea is accepted.

continued viability.[21] We agree with the Court of Appeals in *Spangler* that

> [t]he primary aim of the *McMiller* rule is to ensure compliance with the plea-taking procedures. Implicit in the rule is the assumption that refusing to allow reinstatement of the original charges will assure that the prosecutor will make certain that the plea-taking procedure is followed exactly. In this case the trial court and the prosecutor did their jobs as required by the rule. It was the misrepresentations made by defense counsel which made it necessary to allow the plea to be withdrawn. Penalizing the prosecutor for the fraud committed by defense counsel will not induce a defendant or defense counsel to comply with the rules. Our conclusion is that *McMiller* does not apply in this case; the original charges were properly reinstated.

We are no longer persuaded that the remaining issue raised in *Spangler* merits our review.

RILEY, C.J., and GRIFFIN, J., concurred with BOYLE, J.

---

[21] It is clear that MCR 6.101(F)(7)(d), adopted August 1, 1984, has superseded *McMiller* when a guilty plea is withdrawn in the trial court. Although it has been argued that the court rule is also applicable when a plea is overturned by an appellate court, we have no cause to consider the issue in this case. We do note, however, that Proposed Rule of Criminal Procedure 6.305(D) would overturn *McMiller* in both instances. The comment to the proposed rule, quoting *United States ex rel Williams v McMann*, 436 F2d 103 (CA 2, 1970), indicated that the Rules Committee felt that the *McMiller* approach "encourages gamesmanship and does not enhance the administration of justice."

Additionally, the Sixth and Seventh Circuits have held that there is no constitutional basis for the *McMiller* rule. *Hawk v Berkemer*, 610 F2d 445 (CA 6, 1979); *United States v Anderson*, 514 F2d 583 (CA 7, 1975). However, we find that this is not an appropriate case in which to reexamine the policy reasons for the *McMiller* rule.