*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JEFFREY CRAIG ZIEGLER,

Defendant-Appellant.

UNPUBLISHED
September 1, 2022

No. 358162
Oakland Circuit Court
LC No. 2018-267052-FC

Before: RIORDAN, P.J., and BORRELLO and LETICA, JJ.

PER CURIAM.

Defendant appeals his resentencing pursuant to this Court's order remanding the case for explanation or resentencing, *People v Ziegler*, unpublished per curiam opinion of the Court of Appeals, Issued July 2, 2020 (Docket No. 346811). On appeal, defendant argues the trial court judge, on remand from this Court, (1) violated defendant's right to due process by imposing a vindictive sentence after defendant's successful appeal, (2) violated MCL 769.34(4)(a) by imposing a custodial sentence, and (3) failed to justify his departure from the sentencing guidelines. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

The factual history of this case was explained in defendant's initial appeal to this Court:

Defendant's convictions arise from events that occurred on the morning of April 12, 2018. On that day, the 14-year-old complainant overslept and missed the bus. Because his mother was at work and had taken away his cell phone the night before, the complainant decided to walk to school, which was several miles away. The complainant planned to follow his bus route, but became lost in a particularly confusing subdivision. Eventually, the complainant stopped at defendant's house to ask for directions. The complainant approached defendant's house, rang the doorbell, and then and knocked on the front door. Defendant's wife came downstairs to answer the door, and upon confronting the complainant, she yelled for defendant because she thought the complainant was trying to break into the house. After hearing his wife scream, defendant retrieved his shotgun and headed

-1-

towards his front door. When the complainant saw the gun, he started running away from the house. Defendant emerged from the house, aimed the shotgun toward the complainant as he was running away, and eventually discharged the gun. Fortunately, no one was physically injured when the gun discharged. Defendant offered several explanations for his actions, including that the shotgun discharged accidentally and that, fearing for his safety, he fired a warning shot into the air to scare the complainant.

The incident was captured on video by a home surveillance camera at defendant's house. The video was played for the jury at trial. The video shows the complainant, wearing a backpack, walk up to the front door of defendant's house and ring the doorbell. After waiting a few seconds, the complainant opens the screen door and knocks on the main door. The complainant appears to be speaking to someone inside the house and then releases the screen door and backs away while gesturing with his left hand, as if pointing behind him. He then steps farther back on the porch and puts his hands down at his side. The complainant then backs off the porch, turns to his left, and starts running. At the same time, a shirtless defendant emerges from the house and looks in the complainant's direction while holding a shotgun.

The video shows defendant raising the shotgun to chest height, and he appears to aim the gun in the complainant's direction. Defendant's upper body moves slightly, as though preparing for the gun to recoil. Defendant admitted at trial that, at this point, he pulled the trigger but the safety was on. In the video, defendant briefly glances down at the shotgun while keeping it raised, then fires. Defendant admitted at trial that he "[tried] to shoot the gun, [found] that the safety was on, turn[ed] off the safety, and then [shot]." These events—from the time that defendant is seen walking onto his porch until he discharges the gun—took place in a matter of seconds. In the video, after the gun is discharged, defendant can be seen lowering the gun to his waist while continuing to look in the direction in which the complainant fled, before eventually dropping the gun to his side and walking back into his house.

The jury acquitted defendant of AWIM [assault with intent to commit murder], but convicted him of the lesser offense of AWIGBH and felony-firearm. [*Ziegler*, unpub op at 1-2 (all but last alteration in original).]

This Court affirmed defendant's convictions, but remanded the case "for the trial court to either articulate its reasons for departing from the sentencing guidelines or resentence defendant." *Ziegler*, unpub op at 13. Defendant's sentencing guidelines range, at his initial sentencing, and on remand for resentencing, was 0 to 17 months. Because the original sentencing judge retired, this case was assigned to a different trial court judge, who chose to resentence defendant.

-2-

On remand, both parties submitted sentencing memorandums.[1] Defendant argued his guidelines score called for an intermediate sanction, which required a noncustodial sentence, and a probationary sentence was a sufficient punishment. Defendant asserted he had various redeemable qualities necessitating the trial court judge's attention, including his awards during his service as a firefighter, and strong support from family and friends. Defendant argued his conduct while incarcerated did not justify the prosecutor's request for a higher sentence than in the original case, because defendant only had one minor misconduct for being out of place while incarcerated.

In its memorandum, the prosecution requested the trial court judge exceed the guidelines range when sentencing defendant. In support, the prosecution noted defendant lied throughout the proceedings, including lying (1) that he slipped and the gun accidentally went off, which was not supported by the surveillance video; (2) that he saw the complainant trying to break in, which he later admitted he did not; (3) that the complainant began walking back toward him after running away, which was not supported by the surveillance video; (4) and that he did not level the gun at the complainant, which was not supported by the surveillance video. This lack of candor, the prosecution argued, justified a departure sentence, because it addressed defendant's lack of rehabilitative prospect. The prosecution noted this was not the first time defendant aimed a gun at someone, which the guidelines did not properly consider because the conviction arose over 10 years before. The earlier conviction involved defendant firing his gun in a road rage incident. In this incident, defendant stated he believed the complainant was trying to rob him, so he fired his gun into the air to protect himself. The prosecution also argued the guidelines did not properly account for the harm defendant inflicted on the complainant's family. The family rarely left their home from fear of scrutiny in the community or running into defendant's family, the complainant's mother was in intensive therapy and had to stop working to care for the complainant, and the complainant's stepfather had to end his deployment early, costing the family a large amount of money.

The trial court judge summarized what he saw in the surveillance video, noting the complainant "was a young man on his way to school one morning who needed help. He missed the bus and went to a house for help. And someone shot at him with a gun." The trial court judge did not believe "there was any evidence, uh, on the video from which anyone could conclude [the complainant] was a threat." The trial court judge was concerned with defendant's prior history, "because it represents a repetition in this case[.]" The trial court judge determined he had the authority to impose a custodial sentence on defendant, and found reasonable grounds existed to sentence defendant to incarceration. These grounds included the "nature and characteristics" of the offense, defendant's repetition of his past criminal behavior, and the harm to the complainant.

The trial court judge also found reasonable grounds for an upward departure, noting the impact on the complainant's family, not just the complainant, was a proper consideration to exceed the guidelines, under *People v Corrin*, 489 Mich 855 (2011). He further noted defendant's lack of candor, which went to "the core of the case" regarding whether there was a break in and how the

---

[1] At the resentencing, the prosecution appeared to concede that the amended versions of the statutes applied. However, on appeal, the prosecution now argues that the statues are not subject to retroactive application. In light of our resolution, we need not address this issue.

shooting occurred, and defendant's repetition of similar conduct from his road rage incident. The trial court judge considered the complainant's young age, and opined the notoriety of this case made it unique, because it exacerbated the trauma to the complainant's family. The trial court sentenced defendant to two years' imprisonment for the felony-firearm conviction, and 30 months to 10 years' imprisonment for the AWIGBH conviction.

## II. ANALYSIS

Defendant argues the trial court judge (1) violated his due-process rights by imposing a vindictive sentence on remand, (2) violated MCL 769.34(4)(a) by failing to impose a noncustodial sentence, and (3) failed to properly articulate on the record reasonable grounds for imposing a departure sentence.

## A. VINDICTIVE SENTENCE

On appeal, defendant initially argues that his sentence violates his due process rights under *North Carolina v Pearce*, 395 US 711, 723-724; 89 S Ct 2072; 23 L Ed 2d 656 (1969), overruled in part by *Alabama v Smith*, 490 US 794; 109 S Ct 2201; 104 L Ed 2d 865 (1989), holding that a state trial court's imposition of a heavier sentence on remand to punish the defendant for succeeding in getting the original conviction set aside on appeal violates the Fourteenth Amendment. This vindictiveness against a successful defendant-appellant violates due process of law. While there is no presumption of vindictiveness when a defendant is resentenced to a harsher sentence by a different trial judge on remand, this does not mean a judge, even a different judge on remand, is entitled to impose whatever sentence they wish. Where no information is presented to the successor trial court judge on remand, the successor trial court judge's harsher sentence than the original judge's sentence is evidence of vindictiveness. *Pearce* determined a judge's reasons for imposing a harsher sentence on a defendant after a new trial must affirmatively appear, and must be on the basis of the defendant's conduct after the original sentencing proceedings. *Pearce*, 394 US at 726. Without affirmative reasons for the imposition of a harsher sentence, the presumption of vindictiveness arises, which must be rebutted by objective facts which justify the increased sentence. Additionally, a defendant may produce proof to an appellate court of vindictiveness, even absent the presumption.

Defendant did not raise this before the trial court, and, therefore, this issue is not preserved. *People v Heft*, 299 Mich App 69, 78; 829 NW2d 266 (2012). "A claim that a sentence is vindictive implicates a defendant's constitutional rights." *Michigan v Payne*, 412 US 47, 50; 93 S Ct 1966; 36 L Ed 2d 736 (1973). "This Court reviews de novo a question of constitutional law." *People v Kennedy*, 502 Mich 206, 213; 917 NW2d 355 (2018). Unpreserved issues, however, are reviewed for plain error. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id.* "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceeding." *In re Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008).

The United States Supreme Court has held: "While sentencing discretion permits consideration of a wide range of information relevant to the assessment of punishment, we have recognized it must not be exercised with the purpose of punishing a successful appeal." *Alabama*

*v Smith*, 490 US 794, 798; 109 S Ct 2201; 104 L Ed 2d 865 (1989) (citations omitted). "Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." *Id.* (citation omitted). "In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for him doing so must affirmatively appear." *Id.* (citation omitted). "Otherwise, a presumption arises that a greater sentence has been imposed for a vindictive purpose—a presumption that must be rebutted by objective information . . . justifying the increased sentence." *Id.* at 798-799 (quotation marks and citation omitted, alteration in original). However, "[t]he [*North Carolina v*] *Pearce*[, 395 US 711, 723-724; 89 S Ct 2072; 23 L Ed 2d 656 (1969), overruled in part on other grounds *Alabama v Smith*, 490 US 794; 109 S Ct 2201; 104 L Ed 2d 865 (1989)] requirements . . . do not apply in every case where a convicted defendant receives a higher sentence on retrial. . . . Accordingly, in each case, we look to the need, under the circumstances, to guard against vindictiveness in the resentencing process." *Texas v McCullough*, 475 US 134, 138; 106 S Ct 976; 89 L Ed 2d 104 (1986).

Our Supreme Court has held: "[W]here a second sentence is imposed by a judge other than the judge who imposed the original sentence, we should not invoke a presumption of vindictiveness." *People v Mazzie*, 429 Mich 29, 33; 413 NW2d 1 (1987). "Different judges may perceive the same information differently, and to invoke a presumption of vindictiveness because of the fortuitous circumstances of facing one judge or another would make all sentences constitutionally suspect." *Id.* at 33-34.

Here, defendant concedes there is no presumption of vindictiveness. Rather, defendant argues, the trial court judge was limited to considering only defendant's conduct after the original sentence was imposed, citing *Pearce*, which noted the affirmatively apparent reasons for a more severe sentence after a new trial "must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." *Pearce*, 395 US at 726. This, defendant argues, precluded the trial court judge from considering any of defendant's actions before his original sentencing. For the reasons set forth below, we disagree with the assertions of defendant as to limitations on the trial judge following remand.

"When a case is remanded from our Court because the entire sentence is invalid, every aspect of the sentence is before the judge de novo unless the remand indicates otherwise." *People v Williams*, 208 Mich App 60, 65; 526 NW2d 614 (1994). This Court remanded defendant's original appeal "for the trial court to either articulate its reasons for departing from the sentencing guidelines or resentence defendant." *Ziegler*, unpub op at 13. The trial court judge determined it was inappropriate to speculate the reasons for the original judge's departure from the sentencing guidelines, and chose to follow this Court's alternate order, and resentence defendant. There was no other limitation placed on the trial court judge, and he was permitted to review the sentence de novo.

Because there is no presumption of vindictiveness, the *Pearce* reasoning cited by defendant is inapplicable. Additionally, *Pearce* is distinguishable, because it did not address the current situation, in which a different judge resentences a defendant on remand. Indeed, the United States Supreme Court later recognized:

Pearce was not written with a view to protecting against the mere possibility that, once the slate is wiped clean and the prosecution begins anew, a fresh sentence may be higher for some valid reason associated with the need for flexibility and discretion in the sentencing process. The possibility of a higher sentence was recognized and accepted as a legitimate concomitant of the retrial process. [*Chaffin v Stynchcombe*, 412 US 17, 25; 93 S Ct 1977; 36 L Ed 2d 714 (1973).]

While *Chaffin* considered a defendant's resentencing by a jury, after the trial judge's sentence was reversed, the same logic extends here: "Thus, the jury, unlike the judge who has been reversed, will have no personal stake in the prior conviction and no motivation to engage in self-vindication." *Id.* at 27.

Such is the case here where a different judge, with no personal stake in the prior conviction and no motivation to engage in self-vindication, gave defendant an enhanced sentence. Furthermore, this limitation would completely handicap the resentencing judge, because a new judge, who did not preside over the original proceedings, and had no role in imposing the first sentence, would be unable to resentence a defendant on remand using only the defendant's postconviction actions. The trial court judge necessarily needs to consider a defendant's actions before the initial sentencing, otherwise it would be impossible to properly sentence a defendant for the crime.

Accordingly, in the absence of any evidence that the trial court engaged in a vindictive sentence, we conclude that the trial court did not violate defendant's due-process rights by imposing its sentence. As such, defendant is not entitled to relief on this issue.

## B. INTERMEDIATE SANCTION

Next, defendant argues that the trial court erred by failing to impose a noncustodial sentence. Defendant argues that the time of defendant's initial sentencing, MCL 769.34(4)(a), enacted by 2002 PA 666 (former MCL 769.34), required a sentencing court to sentence a defendant to an intermediate sanction when the high end of the recommended minimum sentence range under the sentencing guidelines was equal to or less than 18 months. At the time, intermediate sanctions were any sanctions other than imprisonment. MCL 769.31(b) enacted by 2004 PA 220. However, 2020 PA 395, effective March 24, 2021, changed the definition of an intermediate sanction to exclude incarceration in jail as well as prison. Therefore, these amendments require a noncustodial sentence for defendants subject to intermediate sanctions, unless the sentencing court provides reasonable grounds for a custodial sentence on the record.

"Questions of statutory interpretation are reviewed de novo." *People v Feezel*, 486 Mich 184, 205; 783 NW2d 67 (2010). "The primary goal is to give effect to the intent of the Legislature." *Id.* "When a statute is ambiguous, judicial construction is appropriate to determine the statute's meaning." *Id.* "When determining the Legislature's intent, the statutory language is given the reasonable construction that best accomplishes the purpose of the statute." *Id.* (quotation marks and citation omitted). "When a statute's language is unambiguous, . . . the statute must be enforced as written. No further judicial construction is required or permitted." *People v Pinkney*, 501 Mich 259, 268; 912 NW2d 535 (2018) (citation omitted, alteration in original).

Defendant's argument regarding which version of MCL 769.34(4)(a) applies to this case is moot because regardless of which version is applied, the trial court judge did not err by imposing a custodial sentence.

Former MCL 769.34(4)(a), enacted by 2002 PA 666 (effective March 1, 2003), states:

(4) Intermediate sanctions shall be imposed under this chapter as follows:

(a) If the upper limit of the recommended minimum sentence range for a defendant determined under the sentencing guidelines set forth in chapter XVII is 18 months or less, the court shall impose an intermediate sanction unless the court states on the record a substantial and compelling reason to sentence the individual to the jurisdiction of the department of corrections. An intermediate sanction may include a jail term that does not exceed the upper limit of the recommended minimum sentence range or 12 months, whichever is less. [*Id.*]

In contrast, the postamendment version of MCL 769.34(4)(a), amended by 2020 PA 395 (effective March 24, 2021), currently imposes a lesser burden on a trial court, stating:

(4) Intermediate sanctions must be imposed under this chapter as follows:

(a) If the upper limit of the recommended minimum sentence range for a defendant determined under the sentencing guidelines set forth in chapter XVII is 18 months or less, the court shall impose an intermediate sanction unless the court states on the record reasonable grounds to sentence the individual to incarceration in a county jail for not more than 12 months or to the jurisdiction of the department of corrections for any sentence over 12 months. [*Id.*]

The only change to the analysis in this case considers whether the trial court judge was required to provide a substantial and compelling reason for its imposition of a custodial sentence, or only provide reasonable grounds. Regardless, both standards were satisfied. Because reasonable grounds is a lesser standard than a substantial and compelling reason, we will employ the substantial and compelling reason for the trial court judge's decision to impose a custodial sentence under both versions of MCL 769.34(4)(a).

First, it is undisputed defendant's sentencing guidelines range of 0 to 17 months falls within the "18 months or less" minimum sentence range considered by the former and postamendment versions of MCL 769.34(4)(a). Second, while defendant focuses a large portion of his analysis on the definition of intermediate sanctions, under MCL 769.31(b), this language is not relevant to the trial court judge's sentencing decision, because the judge was entitled to impose a custodial sentence if he provided a substantial and compelling reason, or reasonable grounds, depending on which version of the statute is used, on the record for doing so. *Id.*

A substantial and compelling reason is an objective and verifiable reason that keenly or irresistibly grabs our attention; is of considerable worth in deciding the length of a sentence; and exists only in exceptional cases. To be objective and verifiable, a reason must be based on actions or occurrences external to the minds of those involved in the decision, and must be capable of being confirmed. [*People*

*v Young*, 276 Mich App 449-450; 740 NW2d 347 (2007) (quotation marks and citations omitted).]

The trial court judge provided multiple reasons on the record for his imposition of a custodial sentence, including: (1) the nature and characteristics of the offense and defendant's conduct, including his lack of candor; (2) defendant's repetition of his earlier criminal behavior; and (3) the harm on the complainant. The trial court judge also noted several additional reasons, such as the fact that defendant had not been truthful about his actions, defendant's lack of remorse, and the harm to the complainant's family as a result of defendant's actions for departing from the sentencing guidelines applied to his reasons for imposing a custodial sentence, which, in addition to the above factors, included the harm to the complainant's family, particularly in light of the notoriety the case received from the media.

All of the above reasons provided the trial court judge with a substantial and compelling reason to impose a custodial sentence on defendant. The severity of defendant's actions, defendant's lack of candor, defendant's history of a similar offense, and the significant impact defendant's actions had on the complainant's family, are "objective and verifiable" reasons which "keenly or irresistibly" grab attention, and constitute external occurrences to the trial court judge imparting the sentence. *Id.* For the same reasons, the trial court judge also had reasonable grounds for imposing a custodial sentence on defendant. Therefore, defendant is not entitled to relief on this issue.

## C. DEPARTURE SENTENCE

Defendant next argues that our prior order of remand necessitated that the trial court, on remand, sentence defendant within the guidelines range unless it articulates reasons for a departure sentence which defendant argues the trial court failed to do. As such, defendant argues, his sentence constituted an abuse of discretion.

"A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *People v Dixon-Bey*, 321 Mich App 490, 520; 909 NW2d 458 (2017) (quotation marks and citations omitted). "[T]he standard of review to be applied by appellate courts reviewing a sentence for reasonableness on appeal is abuse of discretion." *Id.* (quotation marks and citation omitted, alteration in original). "[T]he relevant question for appellate courts reviewing for reasonableness is whether the trial court abused its discretion by violating the principle of proportionality." *Id.* (quotation marks and citation omitted). "An abuse of discretion occurs when the trial court chooses an outcome that falls outside the range of principled outcomes." *People v March*, 499 Mich 389, 397; 886 NW2d 396 (2016) (quotation marks and citation omitted).

Michigan's sentencing guidelines are advisory. *People v Lockridge*, 498 Mich 358, 399; 870 NW2d 502 (2015). "A court may depart from the appropriate sentence range established under the sentencing guidelines set forth in chapter XVII if the departure is reasonable and the court states on the record the reasons for departure." MCL 769.34(3) (footnote and citation omitted). A departure sentence must conform with the principle of proportionality. *Dixon-Bey*, 321 Mich App at 520.

The principle of proportionality is one in which[:]

> [A] judge helps to fulfill the overall legislative scheme of criminal punishment by taking care to assure that the sentences imposed across the discretionary range are proportionate to the seriousness of the matters that come before the court for sentencing. In making this assessment, the judge, of course, must take into account the nature of the offense and the background of the offender. [*Id.* at 520-521 (quotation marks and citations omitted).]

"Under this principle, the key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range." *Id.* at 521 (quotation marks and citations omitted). Several factors may be considered when applying the proportionality standard, including:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*People v Lawhorn*, 320 Mich App 194, 207; 907 NW2d 832 (2017) (quotation marks and citation omitted).]

Here, the trial court's reasoning for imposing a departure sentence was similar to his reasoning for imposing a custodial sentence. The trial court judge considered factors including: (1) defendant's actions during the incident; (2) his lack of candor; (3) the road range incident and its similarity to this case, including a near identical excuse for defendant's behavior; and (4) the harm imposed on the complainant's family. These factors also lend themselves to the overall consideration of defendant's lack of potential for rehabilitation. The trial court judge spent the majority of his analysis on the second and third prongs of the *Lawhorn* test, regarding factors not properly considered by the sentencing guidelines. The trial court judge noted, while OV 4 properly concerned the harm defendant's actions inflicted on the complainant, the guidelines did not properly consider the harm inflicted on the complainant's family. Defendant argues the guidelines did properly consider this harm, in OV 5, which only considers the harm to the victim's family in crimes involving homicide. Because the Legislature specifically excluded considering the harm to a victim's family outside crimes involving homicide, defendant asserts, it necessarily considered this factor, and, therefore, it was not properly used by the trial court judge as a factor not considered by the guidelines.

While "the maxim *expressio unius est exclusio alterius* (the expression of one thing suggests the exclusion of all others) means that the express mention of one thing in a statutory provision implies the exclusion of similar things[,]" this maxim is "only an aid to interpretation[.]" *People v Carruthers*, 301 Mich App 590, 604; 837 NW2d 16 (2013). The true purpose of statutory interpretation is to "is to give effect to the intent of the Legislature." *Feezel*, 486 Mich at 205. The Legislature may have limited the evaluation of OV 5 to crimes involving homicide, but the Legislature also expressly permitted broad judicial discretion regarding factors already considered by the guidelines:

(3) A court may depart from the appropriate sentence range established under the sentencing guidelines set forth in chapter XVII2 if the departure is reasonable and the court states on the record the reasons for departure. All of the following apply to a departure:

* * *

(b) The court shall not base a departure on an offense characteristic or offender characteristic already taken into account in determining the appropriate sentence range *unless the court finds from the facts contained in the court record, including the presentence investigation report, that the characteristic has been given inadequate or disproportionate weight*. [MCL 769.34(3)(b) (emphasis added).]

Hence, the Legislature's express intent to endow a sentencing court with the authority to address factors considered, or even excluded, by the guidelines, if it finds, in its discretion, the factor was not given adequate weight. This is precisely what the trial court judge did. Because OV 5 was not evaluated, the harm to the complainant's family was not adequately addressed by the guidelines, and, therefore, the trial court judge departed from the sentencing guidelines. For the same reason, defendant's argument the guidelines already considered his past conviction, because it was expressly excluded by the 10-year-gap, fails. Both factors were properly considered by the trial court judge. See *Horn*, 279 Mich App at 44-45 ("[O]bjective and verifiable factors . . . such as repeated offenses and failures at rehabilitation—constitute an acceptable justification for an upward departure"); *Corrin*, 489 Mich at 855 ("The psychological injury suffered by the complainant's family members and the likelihood of the defendant reoffending were properly considered by the trial court as substantial and compelling reasons that justify a departure from the statutory guidelines").

Also, worth noting, defendant's argument the trial court judge was not entitled to consider the notoriety of this case when imposing a departure sentence is misplaced. While it is true the notoriety, by itself, does not lend itself to any relevant considerations regarding the complainant, his family, or defendant, the trial court judge explicitly noted the notoriety caused a unique harm to the complainant's family, because they feared leaving their home and being recognized and scrutinized. This considers the additional harm to the complainant's family, not properly considered by the sentencing guidelines. Additionally, the notoriety of the case appeared to be a side comment by the trial court judge regarding the impact on the complainant's family, and was not the only reason he used to justify imposing a departure sentence. Even if the trial court judge's consideration of the case's notoriety was in error, any such error was harmless as his other considerations were more than sufficient to justify imposing a departure sentence.

The trial court judge's reasons for imposing a custodial sentence were essentially the same as his reasons for departing from the guidelines, except he acknowledged the harm to the complainant was already addressed by OV 4. The trial court judge did not abuse his discretion when he reasoned, on the record, (1) the nature of the offense, (2) defendant's lack of candor regarding the core elements of the offense, (3) defendant's earlier conviction of a similar offense with an almost identical excuse, and (4) the harm to the complainant's family, justified the

imposition of an upwardly departing sentence.  Accordingly, defendant is not entitled to relief.

Affirmed.

/s/ Michael J. Riordan
/s/ Stephen L. Borrello
/s/ Anica Letica