*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
April 18, 2024

Plaintiff-Appellee,

v

No. 360217
Kent Circuit Court
LC No. 15-000869-FC

JAMAL DEVONTA BENNETT,

Defendant-Appellant.

Before: BOONSTRA, P.J., and FEENEY and YOUNG, JJ.

PER CURIAM.

Jamal Devonta Bennett appeals as of right his jury trial convictions of second-degree murder, MCL 750.317, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced Bennett to serve 35 to 125 years' in prison for second-degree murder, to run consecutively to his mandatory 2-year sentence for felony-firearm. On appeal, Bennett argues that (1) his constitutional right to a fair trial was violated by an erroneous jury instruction, the admission of unduly prejudicial evidence, and his trial counsel's ineffective assistance; and (2) he is entitled to resentencing. We conclude the challenged instruction was proper, admission of the challenged evidence did not constitute plain error affecting Bennett's substantial rights, and Bennett's trial counsel was not ineffective. However, the trial court erred by miscalculating Bennett's minimum sentencing guidelines range. Therefore, we affirm Bennett's convictions but vacate the judgment of sentence and remand for resentencing consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case stems from a retrial on charges related to the death of Derecko Martin on March 16, 2013. The Michigan Supreme Court vacated the convictions from Bennett's first trial because the trial court erred in admitting rap videos made by Bennett and his friends, which confused the issue before the jury and "portrayed [Bennett] as a ruthless and menacing threat to the community who would shoot upon the least provocation." *People v Bennett*, 505 Mich 961; 937 NW2d 119, 120 (2020). The remand order emphasized that Bennett's state of mind when he shot Derecko, not his identity, was the issue before the jury. The case was remanded for new trial. *Id.*

On March 15, 2013, Phillip Williams and Tayvone Williams were celebrating their birthdays at a party hosted at their aunt's apartment. Donnell Martin, Phillip and Derecko's uncle,[1] was invited. Some of Tayvone's invited friends included Bennett; Bennett's cousin, Anthony Bennett; Juan Colon; Jolan Hines; and Sammie Butler-Coleman.[2] Bennett and Colon allegedly arrived at the party with firearms, which prompted Phillip and other partygoers to request they leave. At this point, the facts diverge.

Many witnesses presented conflicting testimony about the sequence of events that led to a shooting. The testimony is consistent, however, that a chaotic fight broke out and shots were fired. Phillip was shot in his left arm and right hip, but survived. Derecko was shot in the shoulder, abdomen, and head by an individual wearing a red sweatshirt, whom multiple witnesses and exhibits identified as Bennett. Derecko's wounds were fatal.

Based on witnesses' varying accounts, the facts were in dispute regarding whether Colon was armed and provoked the fight, whether Colon or Bennett shot Phillip, and whether Colon fired a first shot before Bennett began shooting (verses whether Bennett was the first to discharge his weapon). In the end, the jury again found Bennett guilty of second-degree murder and felony-firearm. The trial court sentenced him to 35 to 125 years' imprisonment for second-degree murder, an increase from the 30 to 100 years' imprisonment he received after his first sentencing hearing for the same conviction.

Bennett moved for a (second) new trial in the trial court, arguing he received ineffective assistance of counsel. The trial court denied Bennett's motion for a new trial. Bennett now appeals.

## II. ANALYSIS

Bennett argues that his constitutional right to a fair trial was violated in two ways. First, the trial court's instruction to the jury on deadly-aggressor withdrawal, as it pertained to his defense-of-others defense, was erroneous and effectively prevented the jury from acquitting him based on this defense. Second, several pieces of evidence, including photographs and testimony, were unfairly prejudicial and violated his right to a fair trial. Bennett relatedly argues that his trial counsel's failure to object to the admission of this evidence constituted ineffective assistance of counsel. We disagree and affirm Bennett's convictions.

Bennett also argues that he is entitled to resentencing for three reasons. First, he contends that the trial court's basis for increasing his sentence following his retrial was pretextual and the trial court's sentence was vindictive. Second, Bennett asserts that his minimum sentencing guidelines range was incorrectly calculated and should have been lower. Lastly, he argues that the trial court's sentence was disproportionate and violated his constitutional right against cruel or

---

[1] Phillip and Tayvone are half-brothers, but the record is unclear whether Tayvone and Donnell are related.

[2] For clarity, witnesses are referred to by their first names except for Bennett, Juan Colon, and Jolan Hines.

unusual punishment. We agree with Bennett's arguments concerning the scoring of his minimum sentencing guidelines range. As a result, we decline to address the proportionality of his sentence and we remand for resentencing.

## A. INSTRUCTIONAL ERROR

Bennett first argues that the trial court's instruction on deadly-aggressor withdrawal was erroneous and effectively prevented the jury from acquitting him under a theory of defense of others. We disagree.

"We review a claim of instructional error involving a question of law de novo, but we review the trial court's determination that a jury instruction applies to the facts of the case for an abuse of discretion." *People v Everett*, 318 Mich App 511, 528; 899 NW2d 94 (2017) (citation omitted). When an instructional error occurs, "[r]eversal is warranted only if[,] after an examination of the entire cause," it "affirmatively appear[s] that it is more probable than not that the error was outcome determinative." *Id.* (quotation marks and citation omitted; first alteration in original). The defendant must establish that "the error undermined the reliability of the verdict." *People v Hawthorne*, 474 Mich 174, 184; 713 NW2d 724 (2006).

"Under the state and federal Constitutions, a criminal defendant has a right to present a defense." *People v Leffew*, 508 Mich 625, 643; 975 NW2d 896 (2022). Accordingly, "[i]nstructional errors that directly affect a defendant's theory of defense can infringe a defendant's due process right to present a defense." *Id.* (citation omitted). "A criminal defendant is entitled to have a properly instructed jury consider the evidence against him." *People v Armstrong*, 305 Mich App 230, 239; 851 NW2d 856 (2014) (citation omitted).

Jury instructions are considered "as a whole to determine whether error requiring reversal occurred." *People v Wood*, 307 Mich App 485, 519; 862 NW2d 7 (2014). "The instructions must include all elements of the charged offenses and any material issues, defenses, and theories if supported by the evidence." *People v McGhee*, 268 Mich App 600, 606; 709 NW2d 595 (2005). "[T]he trial court is required to instruct the jury concerning the law applicable to the case and fully and fairly present the case to the jury in an understandable manner." *People v Montague*, 338 Mich App 29, 37; 979 NW2d 406 (2021) (alteration in original).

"[A]n imperfect instruction is not grounds for setting aside a conviction if the instruction fairly presented the issues to be tried and adequately protected the defendant's rights." *People v Kowalski*, 489 Mich 488, 501-502; 803 NW2d 200 (2011). The defendant bears the burden of establishing that the asserted instructional error resulted in a miscarriage of justice. *People v Lukity*, 460 Mich 484, 493; 596 NW2d 607 (1999).

"[T]he killing of another person in self-defense is justifiable homicide only if the defendant honestly and reasonably believes his life is in imminent danger or that there is a threat of serious bodily harm and that it is necessary to exercise deadly force to prevent such harm to himself." *People v Riddle*, 467 Mich 116, 127; 649 NW2d 30 (2002). Under the defense-of-others doctrine, " '[o]ne may use force in defense of another when he or she reasonably believes the other is in immediate danger of harm and force is necessary to prevent the harm; deadly force is permissible to repel an attack which reasonably appears deadly.' " *Leffew*, 508 Mich at 638, quoting 3A

Gillespie, Michigan Criminal Law & Procedure (2d ed), § 91:59, 399 (alteration in original). The Self Defense Act (SDA), MCL 780.971 *et seq.*, "removed the traditional common-law duty to retreat, so long as the individual engaging in . . . defense of others was not committing or had not committed a crime and had a legal right to be where they were when they used force." *Leffew*, 508 Mich at 641. "[A]side from limiting one's duty to retreat, the statute did not modify or abrogate the common-law" defense-of-others defense. *Id*.

However, "[a]s with self-defense, defense of others is generally not available to a person who is the initial aggressor." *Leffew*, 508 Mich at 638. An initial aggressor is "one who is the first to use deadly force against the other[.]" *Riddle*, 467 Mich at 120 n 8. "This Court has long defined 'deadly force' as 'where the defendant's acts are such that the natural, probable, and foreseeable consequence of said acts is death." *People v Ogilvie*, 341 Mich App 28, 38; 989 NW2d 250 (2022), quoting *People v Pace*, 102 Mich App 522, 534; 302 NW2d 216 (1980).

As part of its final instructions to the jury, the trial court gave the following deadly aggressor-withdrawal instruction, which matches Michigan Model Criminal Jury Instruction 7.18:

> Deadly aggressor withdrawal. A person who started an assault on someone else with a deadly force and/or with a dangerous or deadly weapon cannot claim that he acted in defense of others unless he genuinely stopped his assault and clearly let the other person know that he wanted to make peace. Then, if the other person kept on fighting or started fighting again, then the defendant had the same right to defend others as anyone else and could use force to save others from immediate physical harm.

Contrary to Bennett's argument, this instruction does not create a duty to retreat in contravention of to the SDA. Importantly, the SDA removes the duty to retreat *only* when the individual "was not committing or had not committed a crime and had a legal right to be where they were when they used force." *Leffew*, 508 Mich at 641. And the defense-of-others defense is unavailable to the initial aggressor, or the first person to use deadly force against another. *Leffew*, 508 Mich at 638. Because an initial aggressor has no legal right to use deadly force to defend others, they remain subject to the common-law duty to retreat. Further, requiring a person who started a deadly assault to let the other person know they want to make peace breaks up the chain of events to ensure they are not the initial aggressor and can be afforded the defense-of-others defense.

The instruction was also supported by the evidence, and fairly and fully presented the applicable law to the jury in an understandable manner. See *Montague*, 338 Mich App at 37; *McGhee*, 268 Mich App at 606. At trial, Bennett asserted that he acted in defense of his friend Colon, who was getting beat up by Donnell. The testimony differed as to whether Colon was armed and provoked the fight, whether Colon or Bennett shot Phillip, and whether Colon fired a first shot before Bennett—identified as the induvial wearing the red sweatshirt—began shooting. Thus, there was evidence at trial for the jury to conclude, as it apparently did, that Bennett was the first to use deadly force, i.e., the initial aggressor. See *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010) (We must "defer to the fact-finder's role in determining the weight of the evidence and the credibility of the witnesses.") (quotation marks, citation, and alteration omitted). We conclude that the trial court's instruction was necessary, rather than erroneous, to ensure that

the jury properly understood and evaluated Bennett's defense-of-others claim. Accordingly, Bennett is not entitled to relief on this issue.

## B. ADMISSION OF EVIDENCE AND INEFFECTIVE ASSISTANCE OF COUNSEL

Bennett next argues that the admission of several pieces of unduly prejudicial photographic and other-acts evidence violated his right to a fair trial, and his trial counsel's failure to object to admission of this evidence constituted ineffective assistance of counsel. He also asserts the trial court abused its discretion in denying his motion for a new trial. We disagree.

## 1. ADMISSION OF EVIDENCE

Bennett's counsel did not object to any allegedly prejudicial evidence at trial, rendering unpreserved the issue of whether his right to a fair trial was violated. MRE 103(a)(1). We review unpreserved evidentiary issues for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). "An error is plain if it is clear or obvious, and it affects substantial rights if it affected the outcome of the lower court proceedings." *People v Swenor*, 336 Mich App 550, 564; 971 NW2d 33 (2021). Under plain-error review, "[r]eversal is warranted only when the error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings independently of the defendant's innocence." *People v Burkett*, 337 Mich App 631, 635; 976 NW2d 864 (2021) (quotation marks and citation omitted).

Bennett's argument regarding evidentiary issues at trial first requires application of MRE 403 and 404(b). MRE 403 governs the exclusion of relevant evidence when it results in unfair prejudice and states: "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."[3] All relevant evidence is prejudicial to a certain degree. Only evidence that is *unfairly* prejudicial can be excluded under MRE 403. To determine this, courts look to whether there is an alternative way to prove the fact at issue. *People v Blackston*, 481 Mich 451, 460; 751 NW2d 408 (2008). MRE 404(b) governs the exclusion of other-acts evidence, and states:

(1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, *opportunity*, intent, preparation, scheme, plan, or system in doing an act, knowledge, *identity*, or absence of mistake or accident when the same is material, whether such other

---

[3] MRE 403 was amended September 20, 2023, effective January 1, 2024. 508 Mich ___. MRE 403 will be analyzed under the version existing in 2021, when the second trial took place. 402 Mich xcv. MRE 404(b) was amended September 20, 2023, effective January 1, 2024, 508 Mich ___, and will also analyzed under the version existing in 2021. 448 Mich cxxvii. This does not affect the issues on appeal.

crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in this case. [Emphasis added.]

Bennett first challenges photographs admitted by the trial court showing him wearing a red sweatshirt and posing alongside his friends with firearms and cash, and flashing "gang" signs. Bennett argues these photographs, along with evidence that almost all his friends were subsequently convicted of violent felonies or perjury in connection with the case, demonstrated to the jury that Bennett was a ruthless and menacing threat to society. This contention, however, ignores the relevant reasons the photographs were admitted at trial in the first place.

As an initial matter, even if the key issue at Bennett's second trial was his state of mind and not his identity, the prosecution still needed to prove identity beyond a reasonable doubt. Testimony at trial established that the challenged photographs, which depicted Bennett wearing a red sweatshirt and holding a firearm, were downloaded from Bennett's phone and taken the night of the party. The photographs helped prove Bennett was wearing red—and that he and his friends were in possession of firearms—that night. And several witnesses testified that the shooter was wearing red. Therefore, the photographs were admitted for legitimate and relevant purposes, both concerning Bennett's identity as the shooter wearing the red sweatshirt and his opportunity to commit the crimes given that he was photographed with a firearm the night of the party.

Bennett also suggests on appeal that the photographs were improperly admitted to prove he was in a gang, and essentially had the same prejudicial effect as the rap videos erroneously admitted during his first trial. In vacating Bennett's convictions after his first trial, our Supreme Court opined that admission of the rap videos was unduly prejudicial and undermined the reliability of the verdict because "they portrayed [Bennett] as a ruthless and menacing threat to the community who would shoot upon the least provocation." *Bennett*, 937 NW2d at 120. The rap videos were created on a different night than the shooting, and the lyrics of the videos referred to gun possession, drugs, and violence. Despite this, the prosecutor relied heavily on the videos to establish Bennett's state of mind and "to satisfy the state's burden of overcoming [Bennett]'s prima facie claim that he shot in defense of another." *Id.* In contrast to the photographs at issue here, which served a legitimate and relevant purpose, the rap videos—because they were taken on a different night—served no purpose in placing Bennett at the apartment or showing he was armed on the night of the shooting, or in speaking to his state of mind when he shot Derecko. And the photographs here are not accompanied by inflammatory lyrics that were partially at issue with the rap videos.

While this analysis compels us to conclude that the challenged photographs were not unduly prejudicial in isolation, there was potential *unnecessary* prejudice, given the number and redundancy of the photographs. The prosecutor did not need multiple photographs to identify Bennett as the person who shot Derecko or show he was armed that night. Only one photograph taken the night of the shooting of Bennett wearing a red sweatshirt and carrying a firearm was necessary. However, under plain-error review, we conclude that Bennett's right to a fair trial was not violated, specifically because any prejudice resulting from the admission of more than one photograph was insufficient to change the verdict (i.e., the error did not affect the outcome at trial). *Swenor*, 336 Mich App at 564. The photographs were duplicative, but did not portray Bennett as any more "ruthless and menacing" than one photograph would have. And admitting just one

photograph, as indicated, would still have showed Bennett wearing red and armed the night of the party to support the prosecution's case.

Bennett next challenges the admission of several of his friends' testimonies that they pleaded guilty to violent felonies or perjury in connection with this case. Bennett contends that this evidence could not be used to impeach his friends' credibility and was only presented at trial as evidence of Bennett's guilt. Contrary to Bennett's contention, this testimony was relevant and admissible. First, the fact that two of his friends possessed a firearm during the fight challenged the credibility of Bennett's defense-of-others defense. Second, and contrary to Bennett's assertion, the prosecution (1) may elicit evidence of a witness's conviction arising out of an incident at issue to bolster the witness's credibility (2) by demonstrating the witness received no deals in exchange for testifying. *People v Manning*, 434 Mich 1, 10-11; 450 NW2d 534 (1990). Thus, evidence that Bennett's friends pleaded guilty to crimes in connection with this case was more probative than prejudicial, and its admission does not constitute error, let alone plain error.

## 2. INEFFECTIVE ASSISTANCE OF COUNSEL

Bennett preserved his ineffective assistance claim for appellate review by timely filing a motion for a new trial on the basis of ineffective assistance of counsel, which the trial court denied. See *People v Lane*, 308 Mich App 38, 68; 862 NW2d 446 (2014). "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "This Court reviews a trial court's factual findings for clear error and reviews de novo questions of constitutional law." *People v Dendel*, 481 Mich 114, 124; 748 NW2d 859 (2008).

"A defendant's right [to effective assistance of counsel] under the Michigan Constitution is the same as that guaranteed by the Sixth Amendment." *People v Aceval*, 282 Mich App 379, 386; 764 NW2d 285 (2009). The Michigan Supreme Court has held that the test articulated in *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984), is the appropriate test for analyzing claims of ineffective assistance of counsel in Michigan. *People v Pickens*, 446 Mich 298, 318-320; 521 NW2d 797 (1994). Under *Strickland*, 466 US at 688, "establishing ineffective assistance requires a defendant to show (1) that trial counsel's performance was objectively deficient, and (2) that the deficiencies prejudiced the defendant." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018).

"Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012). "[T]o demonstrate that counsel's performance was deficient, the defendant must show that it fell below an objective standard of reasonableness under prevailing professional norms." *People v Riley*, 468 Mich 135, 140; 659 NW2d 611 (2003). "In so doing, the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy." *Id*. Further, it is well established that "counsel is not required to advocate a meritless position." *People v Snider*, 239 Mich App 393, 425; 608 NW2d 502 (2000). To establish prejudice, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Randolph*, 502 Mich at 9 (quotation marks and citation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (quotation marks and citation omitted).

Because we have already established that the photographic evidence was admissible to establish identity and opportunity, and Bennett cannot show the result in objecting to the admission of more than one photograph would have been different, defense counsel was not ineffective for failing to make an otherwise meritless objection. *Snider*, 239 Mich App at 425. Specifically, although not every piece of contested evidence was admitted for a relevant and legitimate purpose during Bennett's retrial, the result would not have changed if trial counsel acted differently. *Randolph*, 502 Mich at 9.[4] Therefore, trial counsel was not ineffective for failing to object to the photographs' admission. Similarly, counsel was not ineffective for failing to make a meritless objection regarding the testimonies of Bennett's friends discussed earlier. In sum, Bennett has established neither plain error affecting his substantial rights nor ineffective assistance concerning the evidence he now challenges on appeal.[5]

## C. VINDICTIVE SENTENCING

Bennett also argues that, because the trial court imposed a higher sentence after his retrial than his first trial and its reasons for doing so were pretextual and erroneous, his sentence was vindictive. We disagree.

Because Bennett never preserved this argument, we review the issue for plain error affecting his substantial rights. *Burkett*, 337 Mich at 635. Appellate courts have long recognized that "a sentence that punishes a defendant for successfully appealing a conviction is vindictive and therefore violates a defendant's due process rights." *People v Warner*, 339 Mich App 125, 157; 981 NW2d 733 (2021). When a judge resentences a defendant after retrial to a greater sentence, there is a presumption of vindictiveness. *Id*. at 159. However, "like the federal courts, Michigan appellate courts have not invoked a presumption of vindictiveness when the reason for the imposition of a greater sentence is apparent." *Id*. The presumption of vindictiveness can be overcome when "the judge at resentencing possessed information [that] was unavailable to [the judge] at the initial sentencing, even where that information does not concern conduct of the defendant occurring *after* the first trial." *Id*. at 161, quoting *People v Mazzie*, 429 Mich 29, 35; 413 NW2d 1 (1987). However, "the presumption of vindictiveness may be overcome only when the extent of the increase in the sentence bears a reasonable relationship to the new information." *Id*., quoting *Mazzie*, 429 Mich at 36.

---

[4] This Court, albeit in an unpublished case, has stated that when ineffective assistance and an underlying claim of error are "based on the same factual record"—i.e., when there was no *Ginther* hearing—there is "[no] need, as stated in *Randolph*, to distinguish between the prejudice necessary for plain error affecting substantial rights versus that for ineffective assistance." *People v Singleton*, unpublished per curiam opinion of the Court of Appeals, issued January 26, 2023 (Docket No. 359461), p 9. See *People v Jamison*, 292 Mich App 440, 445; 807 NW2d 427 (2011) ("While [unpublished] opinions are not binding precedent . . . , [this Court] may consider them as instructive or persuasive.").

[5] Bennett also argues the trial court abused its discretion in denying his motion for a new trial. Because we have determined that Bennett's right to a fair trial was not violated and his counsel was not ineffective, the trial court did not abuse its discretion in denying his motion for a new trial.

The trial court sentenced Bennett to serve 30 to 100 years' imprisonment for second-degree murder following his first trial, but sentenced him to serve 35 to 125 years' imprisonment for second-degree murder following his second trial. The trial court justified this increase on the basis that Bennett's minimum sentencing guidelines range was different than it was following his first trial, and the trial court learning new information during the second trial that justified an increased sentence. This new information, according to the trial court, was that the bullet that struck Phillip was fired from the same firearm as the fatal shot to Derecko. The trial court did not, however, indicate what *new* information was presented *at the second trial* to support this conclusion. At both Bennett's first and second trial, testimony was presented that established the bullet recovered from Derecko's body and the bullet removed from Phillip were discharged from the same firearm. In addition, the prosecution argued at Bennett's first sentencing hearing that testimony given during trial supported a conclusion that Phillip and Derecko were shot by the same firearm. In response, the trial court noted that it believed the testimony at trial supported this conclusion. Therefore, absent any specific examples of new information that it learned during Bennett's second trial, it is unclear how the trial court justified an increased sentence on this basis.

The trial court also justified its increased sentence with the fact that Bennett's minimum sentencing guidelines range was higher following his second trial than it was following his first trial. A changed guidelines range counsels against a finding of vindictiveness. See *Warner*, 339 Mich App at 160 (an increased sentence is justified, and not the result of judicial vindictiveness, where the minimum sentence range and maximum potential sentence were increased between the first and second sentencing hearings). Nonetheless, Bennett is entitled to resentencing because the guidelines were not scored correctly.

D.  MISCALCULATION OF THE MINIMUM SENTENCING GUIDELINES RANGE

Bennett next argues that resentencing is warranted because the trial court miscalculated his minimum sentencing guidelines range. We agree.

In reviewing a trial court's scoring of the sentencing guidelines, its "factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Abbott*, 330 Mich App 648, 654; 950 NW2d 478 (2019). Clear error exists when this Court is "left with a definite and firm conviction that a mistake was made." *Id*. "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation," which we review de novo. *Id*. However, while Bennett preserved this issue as to prior record variable (PRV) 2, offense variable (OV) 9, and OV 13 by objecting to the scoring of these variables at his sentencing hearing, he failed to do so for OV 6. See *People v Anderson*, 322 Mich App 622, 634; 912 NW2d 607 (2018). We therefore review Bennett's claim concerning OV 6 for plain error affecting substantial rights. *People v Kimble*, 470 Mich 305, 312; 684 NW2d 669 (2004).

"Under the statutory sentencing guidelines, the trial court must score the applicable offense and prior record variables to determine the appropriate range for the minimum sentence." *Kimble*, 470 Mich at 309. Although the "sentencing guidelines are advisory in all applications," *People v Posey*, 512 Mich 317, 325; ___ NW2d ___ (2023), "[a] defendant is [still] entitled to be sentenced by a trial court on the basis of accurate information." *People v Francisco*, 474 Mich 82, 88; 711 NW2d 44 (2006). "A sentencing court has discretion in determining the number of points to be

scored, provided that evidence of record adequately supports a particular score." *People v Hornsby*, 251 Mich App 462, 468; 650 NW2d 700 (2002). Resentencing is an appropriate remedy when "a defendant's sentence is based on an inaccurate calculation of the sentencing guidelines range and, therefore, does not conform to the law." *People v Underwood*, 278 Mich App 334, 337; 750 NW2d 612 (2008).

Bennett first challenges the scoring of PRV 2, which was assigned 10 points. A trial court assesses points under PRV 2 by determining whether and how many "prior low severity felony convictions" the defendant has. MCL 777.52(1). If the defendant has two prior, low-severity felony convictions, the trial court must assign 10 points to PRV 2. MCL 777.52(1)(c). A prior, low-severity felony conviction is defined as a conviction entered before the commission of the sentencing offense and either (1) whose offense class is listed as E, F, G, or H; (2) is a felony under federal law or another state's law that corresponds to a crime whose offense class is listed as E, F, G, or H; or (3) a felony that is punishable by a maximum term of less than 10 years and that is not listed as offense Class M2, A, B, C, D, E, F, G, or H, or a corresponding felony under federal law or another state's law. See MCL 777.52(2).

At Bennett's second sentencing hearing, the prosecution argued that 10 points could properly be assigned to PRV 2 on the basis that Bennett pleaded *nolo contendere* to one count of carrying a concealed weapon and one count of resisting and obstructing a police officer in 2013. The trial court agreed and altered Bennett's score for PRV 2 from 5 points to 10 points. A review of the presentence investigation report (PSIR) prepared for Bennett's second sentencing hearing shows he was arrested and charged with one count of carrying a concealed weapon and one count of resisting and obstructing a police officer in 2012. However, the PSIR also shows that Bennett's final charge in connection to these offenses was carrying a concealed weapon. The PSIR also establishes Bennett entered a plea of *nolo contendere* on January 28, 2013, to that charge. Therefore, the information in the PSIR suggests Bennett's initial charge of resisting and obstructing a police officer was dismissed in exchange for his *nolo contendere* plea of carrying a concealed weapon. Accordingly, Bennett only possessed one prior, low-severity felony conviction on the date of his second sentencing hearing, and the trial court erred by assigning 10, rather than 5, points to PRV 2.

Bennett next challenges the scoring of OV 9, which was assigned 10 points. A trial court assesses points under OV 9 by determining how many victims the defendant's offense created. MCL 777.39(1). The trial court must assign 10 points to OV 9 if "there were two to nine victims who were placed in danger of physical injury or death, or four to nineteen victims who were placed in danger of property loss[.]" MCL 777.39(1)(c). In scoring OV 9, each person who was placed in danger of physical injury or loss of life or property must be counted as a victim. MCL 777.39(2)(a).

"A person may be a victim under OV 9 even if he or she did not suffer actual harm; a close proximity to a physically threatening situation may suffice to count the person as a victim." *People v Gratsch*, 299 Mich App 604, 624; 831 NW2d 462 (2013), vacated in part on other grounds 495 Mich 876 (2013), citing *People v Morson*, 471 Mich 248, 262; 685 NW2d 203 (2004) (holding that the trial court properly assessed 10 points for OV 9 when someone was "standing nearby" as an armed robbery of someone else occurred, but was not physically harmed). Further, only conduct related to the sentencing offense may be considered, *People v Sargent*, 481 Mich 346, 348; 750

NW2d 161 (2008), and it is improper for a trial court to consider conduct after an offense has been completed, *Gratsch*, 299 Mich App at 623.

Bennett argues that only Derecko was placed in danger of injury when Bennett's offense was committed and, therefore, zero points should have been assigned to OV 9. Bennett contends that the other individuals who were fighting at the time of the fatal shot to Derecko were already in danger of physical injury because of the fight itself. While it is reasonable to infer from conflicting testimony about Colon firing a gun before Bennett that the other individuals in the living room were already in danger of physical injury before Bennett discharged his firearm, this argument ignores Bennett's responsibility for placing everyone in the living room at the time that he discharged his firearm in further danger of physical injury or loss of life. Even if the individuals fighting were already placed in some form of danger of physical injury, they were certainly placed at a higher risk of physical injury when Bennett fired multiple shots into the living room. Accordingly, the trial court properly assigned 10 points to OV 9.

Bennett next challenges the scoring of OV 13, which was assigned 25 points. A trial court assesses points under OV 13 by determining if the sentencing offense was part of a "continuing pattern of criminal behavior." MCL 777.43(1). The trial court must assign 25 points to OV 13 if "the offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person[.]" MCL 777.43(1)(c). In calculating the score of OV 13, all crimes within a five-year period, including the sentencing offense, must be counted, regardless of whether the offense resulted in a conviction. MCL 777.43(2)(a). Further, the trial court is free to consider charges that were previously dismissed if there is a preponderance of the evidence supporting that the offense took place. *People v Nix*, 301 Mich App 195, 205; 836 NW2d 224 (2013). In doing so, it may rely on statements made in the PSIR. *Id*. at 205 n 3. A trial court may also "consider the charges against a defendant dismissed as a result of a plea agreement." *Id*. at 205.

Bennett asserts that the offenses the prosecution contends were relevant to scoring OV 13 were not proved by a preponderance of the evidence and, therefore, zero points should have been assigned to OV 13. We agree. Bennett's present offense of second-degree murder must be counted toward scoring OV 13. See MCL 777.43(2)(a). The other two offenses the prosecution asserts were part of a "pattern of felonious criminal activity" were resisting and obstructing a police officer and armed robbery. A review of Bennett's PSIR establishes he was charged with, but not convicted of, resisting and obstructing a police officer on September 22, 2012. Likewise, Bennett was charged with, but not convicted of, armed robbery on March 11, 2014.

On appeal, the prosecution merely asserts that both these charges were dismissed pursuant to a plea deal. However, the prosecution fails to present any evidence to establish that Bennett committed these offenses or committed conduct related to the charges that could be classified as a felony crime against a person, and it provided no such evidence at Bennett's second sentencing hearing. See *People v Underwood*, unpublished[6] per curiam opinion of the Court of Appeals, issued August 9, 2016 (Docket No. 327085), p 5 (Scoring 25 points under OV 13 was improper when, for one of the three required offenses, "the prosecution relied solely on the fact that [the]

---

[6] "While [unpublished] opinions are not binding precedent . . . , [this Court] may consider them as instructive or persuasive." *People v Jamison*, 292 Mich App 440, 445; 807 NW2d 427 (2011).

defendant was *originally charged* with a felony and pleaded guilty to similar conduct classified as a misdemeanor" and "did not provide any additional evidence of the conduct underlying [the] defendant's aggravated assault offense that would allow the trial court to conclude by a preponderance of the evidence that the conduct could be classified as a felony crime against a person.") (emphasis added). Although a trial court may consider dismissed offenses in assigning points to OV 13, those offenses must be established by a preponderance of the evidence. *Nix*, 301 Mich App at 205. That never occurred here. Accordingly, the trial court erred by assigning 25 points to OV 13.

Lastly, Bennett challenges the scoring of OV 6, which was assigned 25 points. A trial court assesses points under OV 6 by assessing the defendant's "intent to kill or injure another individual." MCL 777.36(1). The trial court must assign 25 points to OV 6 if the defendant "had an unpremeditated intent to kill, the intent to do great bodily harm, or created a very high risk of death or great bodily harm knowing that death or great bodily harm was the probable result[.]" MCL 777.36(1)(b). Alternatively, the trial court must assign 10 points to OV 6 if the killing was intentional within the definition of second-degree murder or voluntary manslaughter, but the death clearly occurred in a combative situation or in response to victimization of the offender by the decedent. MCL 777.36(2)(b).

Bennett argues that the trial court should have assigned 10, rather than 25, points to OV 6 because his killing of Derecko was intentional for purposes of second-degree murder but occurred in a combative situation. Bennett did not object to the scoring of OV 6 at his second sentencing hearing; therefore, to warrant relief, Bennett must establish plain error that affected his substantial rights. See *Kimble*, 470 Mich at 312. Bennett has failed to do so.

This Court has held "it would be absurd to reward [a] defendant with a lower score merely because the deceased tried unsuccessfully to defend himself." *People v Rodriguez*, 212 Mich App 351, 354; 538 NW2d 42 (1995). Evidence presented at trial established that the fight initially occurred between two individuals other than Derecko, but Derecko joined the fight to help retrieve the firearm that was being fought over. Derecko did so presumably to protect people, including himself, from being harmed by the firearm. Therefore, the record demonstrates that Derecko joined the fight to defend himself and others. This conclusion is further supported by the fact that Derecko was unarmed throughout the entire fight. Under *Rodriguez*, which was decided on near identical facts, Derecko's involvement in the fight to defend himself and others does not constitute a "combative situation" under OV 6 because he was not an aggressor. *Id*. at 353-354. See also MCL 777.36(2)(b). Therefore, the trial court properly assigned 25 points to OV 6, and Bennett cannot establish plain error affecting his substantial rights.

In sum, the trial court properly assigned 10 points to OV 9 and 25 points to OV 6. However, the trial court erred by assigning 10, rather than 5, points to PRV 2 and by assigning 25, rather than zero, points to OV 13. When properly calculated, Bennett's total PRV score should have been 25 points, and his total OV score should have been 90 points. With these scores, Bennett still would have been scored at PRV Level D, but he would have been scored at OV Level II (as opposed to OV Level III). See MCL 777.61. Therefore, Bennett's minimum sentencing guidelines range would have changed. Because Bennett's sentence is based on an inaccurate calculation of the sentencing guidelines range and, therefore, does not conform to the law, Bennett is entitled to resentencing. See *Underwood*, 278 Mich App at 337. See also *Francisco*, 474 Mich at 89-90

(stating that a defendant is entitled to resentencing when a scoring error alters the appropriate guidelines range).[7]

### III. CONCLUSION

We conclude that Bennett's constitutional right to a fair trial was not violated; however, he is entitled to resentencing because his minimum sentencing guidelines range was miscalculated.

Affirmed in part, vacated in part, and remanded for resentencing. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Kathleen A. Feeney
/s/ Adrienne N. Young

---

[7] Bennett also argues that his sentence was disproportionate. Because Bennett's sentence is based on an inaccurate calculation of the sentencing guidelines range, we do not to discuss proportionality.